# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3448

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Terry Lee Brooks, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: March 14, 2000

Filed: June 14, 2000

_____

Before McMILLIAN and HEANEY, Circuit Judges, and BOGUE[1], District Judge.

_____

HEANEY, Circuit Judge.

Terry Lee Brooks appeals his conviction and sentence for distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1). He claims that the government's conduct constituted entrapment as a matter of law. We agree, and thus reverse his conviction.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge, for the District of South Dakota, sitting by designation.

# BACKGROUND

In the spring of 1997, Greg Brugman, a Special Agent with the Iowa Division of Narcotics Enforcement, was on duty posing as a drug purchaser. During this time, Brugman was approached by Michael Walker. Walker informed Brugman that he had worked with the government before as a confidential informant, and that he could help introduce Brugman to drug dealers in the Cedar Rapids area. Brugman agreed to employ Walker as a confidential informant. As part of the arrangement, Walker was to receive a cash payment from Brugman every time he introduced Brugman to a drug dealer or helped Brugman buy drugs.

Terry Lee Brooks came to know Walker while they spent time together at a halfway house in 1996. While in the halfway house, Brooks, a self-professed heroin addict, was buying heroin from Walker. Brooks continued buying heroin from Walker once both men were released from the halfway house, and while Walker was employed as a government agent by Brugman. Brooks testified that Walker was the only heroin dealer he knew in Cedar Rapids, and that Walker was his only supplier. The record does not reveal who Walker's supplier was.

On May 27, 1997, after Walker had been employed by Brugman, he sold Brooks six packets of heroin for fifty dollars a packet. Later that evening, Brooks received a late-night telephone call from Walker. Walker stated that his supply of heroin had run out, and that he had a customer who needed heroin badly as she was suffering from withdrawal. Walker asked Brooks to give back some of the heroin that he had provided earlier in the evening. Brooks refused Walker's request, stating that he planned on keeping the heroin for himself.

Early the next morning, Walker again approached Brooks, this time in person. Again, Walker stated that he needed some of the heroin back. Again, Brooks rebuffed Walker's attempts to retrieve the heroin. Later that same day, Walker twice contacted

2

Brooks by telephone, again asking Brooks to return some of the heroin. Brooks continued to deny Walker's requests until Walker threatened to cut off Brooks' own heroin supply. At that point, Brooks relented. Brooks suggested that Walker come over to his house to pick up the heroin. Walker refused, stating that he wouldn't have any money for the heroin until later in the afternoon. Brooks replied that Walker need not worry about the money, as it was understood that Walker would replace Brooks' supply later. Brooks agreed to meet Walker at a laundromat to return the heroin.

Meanwhile, Walker had informed Brugman that he had set up a controlled buy at the laundromat with Brooks. Walker and Brugman arrived, and Brugman, posing as the purported buyer, informed Brooks that the heroin was for his sick girlfriend. Brooks then returned two heroin packets to Walker, who passed them on to Brugman. Brugman then gave Walker one hundred dollars that Walker passed on to Brooks as compensation for the packets. Following this controlled buy, Brugman paid Walker one hundred dollars for his assistance.

Walker subsequently set up two other controlled buys between Brugman and Brooks, using the same strategy to persuade Brooks to sell to Brugman. Both times, Brooks had purchased heroin from Walker. Both times, Walker asked for Brooks to return a portion. Instead of returning the heroin, Brooks substituted Benadryl, a non-controlled substance. Brugman paid Walker one hundred dollars per transaction for his role. Brugman also saw Brooks give Walker a portion of the proceeds from one of these sales.[2]

## DISCUSSION

Brooks claims that the facts above establish entrapment as a matter of law, and thus his conviction should be reversed. In reviewing his claim, we view the

---

[2]Walker was not charged with any crime in connection with these two sales of purported controlled substances.

3

evidence in the light most favorable to the government. See United States v. Lard, 734 F.2d 1290, 1294 n.2 (8th Cir. 1984). To demonstrate entrapment as a matter of law,

> the evidence must clearly have indicated that a government agent originated the criminal design; that the agent implanted in the mind of an innocent person the disposition to commit the offense; and that the defendant then committed the criminal act at the urging of the government agent.

United States v. Kummer, 15 F.3d 1455, 1459 (8th Cir. 1994) (quoting United States v. Shaw, 570 F.2d 770, 772 (8th Cir. 1978)). The critical question for us to consider is whether the defendant was predisposed to committing the crime independent of the government's meddling. See Jacobson v. United States, 503 U.S. 540, 549 (1992); see also Sorrells v. United States, 287 U.S. 435, 451 (1932) (holding controlling question in entrapment defense is "whether the defendant is a person otherwise innocent whom the Government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials.") When a defendant raises entrapment as a defense, the prosecution bears the burden of proving the defendant's criminal predisposition beyond a reasonable doubt. See Jacobson, 503 U.S. at 548-49.

In considering a defendant's predisposition, we must examine the defendant's personal background. See Kummer, 15 F.3d at 1459. We also examine the extent to which the government instigated or induced the defendant's criminal activity. See id.

At the outset, it is clear that Walker was working as a government agent in May of 1997, as he was being paid by the government to set up drug buys. There was no evidence that Brugman knew Walker had sold the very heroin to Brooks that Brugman sought to purchase, nor was there any evidence that Brugman knew of the coercive tactics Walker was using in order to effectuate the sales and claim his finder's fees.

4

However, ignorance of its agents' actions does not relieve the government of responsibility for the conduct of its agents, including Walker. See Sherman v. United States, 356 U.S. 369, 374-75 (1958) (attributing informant's egregious conduct to government despite government's alleged ignorance of informant's coercive tactics; "[t]he Government cannot make such use of an informer and then claim disassociation through ignorance.")

In Sherman, an unpaid informant befriended the defendant as a fellow recovering drug addict. The informant then asked Sherman to find some drugs for him, claiming that he was not responding to drug treatment and needed drugs to lessen his suffering. Sherman was not using drugs at this time, and tried to avoid the informant's requests. After repeated attempts, Sherman finally acquiesced. He returned to his habit, bought drugs and split them with the informant. The informant then alerted the Bureau of Narcotics that Sherman was selling him drugs. The Bureau of Narcotics observed the transactions, and Sherman was criminally charged for the sales. The Supreme Court found that this level of government meddling established entrapment as a matter of law, admonishing that legitimate law enforcement "does not include the manufacturing of crime." Sherman, 356 U.S. at 372.

The facts of this case similarly demonstrate an improper level of governmental involvement and inducement. Brooks produced evidence that he was an addict, and that Walker was his only source of heroin. Once Walker sold Brooks heroin, Walker was unrelenting, accosting Brooks time and again demanding that Brooks return some heroin to Walker. Brooks was able to fend off Walker until he was overcome by Walker's threat to cut off Brooks' own supply. Only then did Brooks yield and return Walker's heroin in exchange for a portion of his money back. Thus, a government agent first sold Brooks heroin, then coerced him into selling the heroin back to another agent.

The government contends that even if Walker did improperly induce the heroin sale, other circumstances suggest that Brooks was predisposed to this criminal enterprise. If Brooks was otherwise predisposed to sell heroin, the government's inducement alone does not establish entrapment as a matter of law.[3] See Lard, 734 F.2d at 1293-94.

In support of its position, the government directs us to the two sales of purported controlled substances. According to the government, the fact that Brooks continued to deal with Brugman, together with the evidence that Brooks gave Walker twenty dollars following one sale, demonstrate that Brooks' drug dealing was not the product of government coercion.

The government's argument misses the mark. Both sales to which the government directs us occurred after Walker's initial inducement. In examining a defendant's alleged predisposition to commit an offense, we examine whether the defendant "possessed the requisite predisposition prior to the Government's investigation and [whether] it existed independent of the Government's many and varied approaches to [the defendant]." See Jacobson, 503 U.S. at 553; see also United States v. Fedroff, 874 F.2d 178, 182 (3d Cir. 1989) ("In general, predisposition may be defined as the defendant's inclination to engage in the crime for which he was charged measured before his initial exposure to government agents.") (emphasis added) (citation and footnote omitted). Thus, Brooks' actions *after* his first sale to Brugman are irrelevant to the issue of his predisposition as it existed *before* this initial sale.

The government also points us to Brooks' 1993 conviction of possession of cocaine with intent to distribute as evidence that he was predisposed to sell heroin.

---

[3]We note that Brooks does not argue that the government's conduct is so outrageous as to violate due process independent of his disposition, a claim wholly independent of the entrapment defense. See Kummer, 15 F.3d at 1459 n.9.

6

While perhaps probative, this evidence standing alone is insufficient to establish predisposition. The defendant in <u>Sherman</u> had been convicted of two prior drug offenses, one sale-related and one for possession. <u>See</u> <u>Sherman</u>, 356 U.S. at 375. Still, the Court found that this evidence alone was insufficient to establish that the defendant was predisposed to sell illegal drugs, particularly in light of the other evidence of governmental coercion. <u>See</u> <u>id.</u> at 375-76. We adopt the same analysis and reach the same result.

Lastly, the government notes that the issue of entrapment was properly before the jury, who decided against Brooks. It cautions us against disturbing such a finding, citing <u>Masciale v. United States</u>, 356 U.S. 386, 388 (1958), for the proposition that a defendant's own unrebutted testimony[4] is insufficient to establish entrapment as a matter of law. However, <u>Masciale</u> does not go so far. In <u>Masciale</u>, the only evidence of inducement was that a government informant had persuaded the defendant to enter the drug trade, using the lure of easy income. <u>See</u> <u>id.</u> The Court held that this evidence alone did not demonstrate entrapment as a matter of law, but rather created a jury question as to whether the defendant was entrapped, and in such a case, the jury was free to make credibility determinations. <u>See</u> <u>id.</u>

Certainly, when a defendant presents evidence which supports his position, it may create a jury question. In such a case, a jury is called upon to make credibility determinations in evaluating the weight of the evidence. However, when that evidence is unrefuted and so overwhelming as to lead reasonable jurors to but one conclusion, judgment as a matter of law is appropriate. The evidence in this case could lead to no other conclusion other than that Brooks was entrapped as a matter of law. Based on the entirety of the evidence, no reasonable juror could have found beyond a reasonable doubt that Brooks was not induced by Walker to commit the crime. Brooks produced

---

[4]As in <u>Masciale</u>, the government here did not call Walker or any other witness to rebut the defendant's evidence of entrapment.

significantly more evidence of improper government inducement than the defendant in Masciale, none of which was rebutted by the government.

Further, it is the government who bears the burden of proving that Brooks was predisposed to commit the crime. See Jacobson, 503 U.S. at 548-49. Brooks' prior conviction, standing alone, does not establish that he was predisposed to sell Brugman heroin. The government produced no other evidence of predisposition, and thus has not met its burden.

It is not without pause that we overturn a jury verdict of guilty. However, we must recognize that "[t]he continuing vitality and integrity of our 'government of laws' would be imperiled if we sanctioned the manufacturing of crime by those responsible for upholding and enforcing the law." Lard, 734 F.2d at 1296. Here, Walker, the government's agent, sold Brooks heroin, then induced him to sell the drug back to Brugman, another government agent. Once Brooks acquiesced, the government sought to punish him for relenting to its coercive tactics. The government may not condemn an otherwise innocent person for committing, at the behest of the government, a crime which the government itself has devised.

## CONCLUSION

We agree that "[t]he power of the government is abused . . . when employed to promote rather than detect crime and to bring about the downfall of those who, left to themselves, might well have obeyed the law." Sherman, 356 U.S. at 384 (Frankfurter, J., concurring.) The government's conduct here cannot stand, and we accordingly reverse Brooks' conviction.

8

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.