# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3047

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Arkansas. |
| Todd Wesley Myers, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 12, 2009
Filed: August 10, 2009

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Todd Wesley Myers was convicted of knowingly attempting to transfer obscene material to a person under the age of sixteen, in violation of 18 U.S.C. § 1470, and knowingly attempting to induce a child to engage in criminal sexual activities, in violation of 18 U.S.C. § 2422(b). He appeals, arguing that he was entrapped as a matter of law, that the evidence was insufficient to support his conviction, and that the district court[1] erred in admitting evidence. We affirm.

_____

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

In October 2006, Chief Richard Friend of the Shannon Hills, Arkansas, Police Department was involved in an undercover investigation to locate sexual predators on the Internet. Using the pseudonym "Stephanie" and screen name "stephanieboyd1994," he entered an Arkansas romance chat room on Thursday, October 5, and was contacted by Myers, who was then a twenty-four year-old male residing in Alma, Arkansas. Stephanie identified herself as a fourteen-year-old female living in Little Rock, Arkansas. Myers asked if he was too old for her and whether she had a boyfriend, to which Stephanie replied no. In response to Myers's request for a photo, Stephanie sent a picture of a young female in a bikini. She then asked Myers how far he was from Little Rock and whether he was looking to hook up, to which Myers said "now do I really need to answer that. look at you. you are a goddess and seem really sweet."[2] Myers again asked if he was too old for Stephanie, and she responded "nah . . . just promise not to get me prego . . . thats all i worry about." During the remaining few minutes of the conversation, Myers initiated a "20 question like game" in which he queried Stephanie about her undergarments. Both parties agreed to meet online the next day.

Around 9:30 a.m. the following morning, Myers sent several instant messages to Stephanie without any reply. When Chief Friend responded to Myers later that day, the stephanieboyd1994 screen name had changed to "Kim Wilson." Chief Friend explained that this occurred because he accidentally linked the stephanieboyd1994 screen name with the profile of another persona that he used for his investigation.

---

[2]We have avoided making any edits that would alter the meaning of the electronic communication; thus, the quoted language includes a number of grammatical and typographical errors.

Myers, however, did not appear to notice the distinction.[3] He referenced the twenty question game the two had played the day before and asked Kim about her underwear. Myers also reintroduced the idea of meeting:

> Todd Myers: so i can come down like next Tuesday if you wanna see me
> Kim Wilson: k
> Kim Wilson: what time?
> Todd Myers: well is there anyway you can be home alone all day?
> Kim Wilson: i can skip [school] if your 4 real
> Todd Myers: yes I am
> Todd Myers: will u be home all day alone?
> Kim Wilson: can be

Kim then asked Myers what he wanted to do when they met—"oral? . . . or more?" Myers answered "get totally naked and lick food off one another if you are down with it," and Kim replied "HELL YEAH!" The conversation progressed to more graphic details of the anticipated sexual encounter, and Kim asserted that Myers had to bring protection. Kim also brought up the subject of her age at two different points in the conversation:

> Kim Wilson: you not messed up about the age?
>  . . .
> Todd Myers: are u messed up about the age?
> Kim Wilson: no
> Kim Wilson: r u?
> Todd Myers: when two people like each other age shouldn't be a factor
> . . .
> Kim Wilson: ur sure the age and distance isnt bad?
> . . .

---

[3]Both Myers and Chief Friend later explained that such name changes can occur after a person adds another individual as a "friend," as Myers did in this case with stephanieboyd1994.

Todd Myers: well you act older and as long as the age don't bother you, it don't bother me

At the end of their conversation, Kim asked if Myers planned to come the next week and Myers suggested he could pick her up from school or drop by her house after her mother had left. Myers and Kim made plans to talk again on Monday.

Myers exchanged offline messages with Kim on Monday, October 9, but did not have an extended conversation until Tuesday morning. Kim contacted Myers and asked "what happened to u?" Myers responded that his mother had suddenly become ill and he had been busy caring for his younger brother, but he offered "You give me a day like Thursday maybe and I will be there ok?" Several minutes later, Myers asked Kim if she wanted to see something and proceeded to send a four-minute video of himself masturbating his erect penis, which formed the basis of the government's charge for transferring obscene material. Later in the chat, Myers and Kim once again discussed the possibility of meeting. Myers inquired if they would be alone all day and Kim asserted that she would skip school and call as soon as her mother had left the house. Kim again broached the subject of her age:

Kim Wilson: are you sure the age thing isnt a big deal?
. . .
Todd Myers: are you sure it isn't a big deal?
Kim Wilson: I'm not messed up about it
. . .
Kim Wilson: but you might be
Todd Myers: why?
Kim Wilson: I mean your like 10 years older than me
Kim Wilson: I don't want you to get bored with me
Todd Myers: i like you
Kim Wilson: well . . . i like you too
Todd Myers: and I wanna cuddle with you all day long

The next day, October 11, Myers drove from Alma to Shannon Hills to meet Kim. Along the way, he sent and received a number of text messages concerning directions, what Kim was wearing, and what she would do upon his arrival. Myers was apprehended at the designated meeting place with two boxes of condoms and a digital camera in the front seat of his truck. When asked how old he thought the girl was, Myers stated "I thought she said seventeen, but just fourteen."

At trial, Myers argued that he did not believe the person with whom he was chatting was a minor, and he sought to raise the affirmative defense of entrapment. The district court determined that Myers had presented sufficient evidence of government inducement to warrant an entrapment jury instruction. The government argued that even if Myers had been induced to act, his entrapment defense should fail because he was predisposed to commit the offenses. Myers's ex-wife testified for the government that Myers had previously engaged in sexually explicit online conversations and had a pattern of asking intimate questions about female attire. After the jury returned a guilty verdict on both counts, Myers filed an unsuccessful motion for judgment of acquittal, arguing that the evidence was insufficient and that he was entrapped as a matter of law.

## II.

Myers first argues that he was entrapped as a matter of law. The defense of entrapment recognizes that "[l]aw enforcement officers go too far when they implant in the mind of an innocent person the *disposition* to commit the alleged offense and induce its commission in order that they may prosecute." Jacobson v. United States, 503 U.S. 540, 553 (1992) (internal quotation omitted). A valid entrapment defense involves two interrelated elements: government inducement of criminal conduct and an absence of criminal predisposition on the part of the defendant. Mathews v. United States, 485 U.S. 58, 63 (1988). Inducement focuses on the government's actions, whereas predisposition "focuses upon whether the defendant was an 'unwary

innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." Id. The two inquiries are often closely linked, because the need for greater inducement may suggest that the defendant was not predisposed to commit the crime; and conversely, a ready response to minimal inducement indicates criminal predisposition. United States v. Poehlman, 217 F.3d 692, 698 (9th Cir. 2000). Because the entrapment defense requires factual determinations about government conduct and its likely effect upon a defendant, "[t]he question of entrapment is generally one for the jury, rather than for the court." Mathews, 485 U.S. at 63. Where the evidence is in conflict, we leave the jury's verdict undisturbed. United States v. Pardue, 983 F.2d 843, 847 (8th Cir. 1993) (per curiam). We will conclude that the defendant was entrapped as a matter of law only if the evidence clearly shows that "the government agent developed the criminal plan and that the defendant was not predisposed to commit the crime independent of the government's activities." United States v. Kurkowski, 281 F.3d 699, 701 (8th Cir. 2002).

The starting point for our analysis is whether Myers has established that the government induced him to violate the law. Myers looks past this threshold issue, contending that his burden to show inducement was met because the district court determined that his entrapment defense warranted a jury instruction.[4]

When, as here, the government has not conceded the issue of inducement, the defendant's burden ought not be cast aside lightly. See United States v. Brand, 467 F.3d 179, 190 (2d Cir. 2006). Inducement is government conduct that creates a substantial risk that an otherwise law-abiding person will commit a criminal offense.

---

[4]Myers cites Jacobson and United States v. Brooks, 215 F.3d 842 (8th Cir. 2000), for the proposition that our analysis should proceed directly to the question of predisposition. In Jacobson, the government conceded the issue of inducement, see 503 U.S. at 549 n.2; and in Brooks, inducement was so obvious that it did not merit discussion, see 215 F.3d at 845.

United States v. Stanton, 973 F.2d 608, 610 (8th Cir. 1992). "Inducement may take different forms, including pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship." Id. Inducement, however, must consist of something more than an opportunity to break the law. See id. And it is well settled that the government may use artifice, stratagem, and undercover agents in its pursuit of criminals. Jacobson, 503 U.S. at 548.

The following factors are pertinent to the discussion: (1) whether the government made the initial contact; (2) the effect of the photo that the government sent to Myers; (3) whether the government introduced the topics of sex and meeting in person; and (4) the extent to which the government influenced Myers's behavior by portraying Stephanie and Kim as sexually precocious teenagers. There was some dispute about who made the first contact in this case. Although the chat transcripts admitted into evidence indicated that Chief Friend first contacted Myers, Chief Friend testified that, in compliance with his department's policy of never doing so, he had not initiated the chat with Myers. He offered as an explanation for why Myers's name did not appear first the fact that Myers's first message was an emotion icon that did not transfer when the chats were copied into an electronic document. Faced with this conflicting evidence, the jury could have credited Chief Friend's testimony about who sought out whom. But in any event, Myers "cannot establish inducement merely by showing that the government solicited, requested or approached him to engage in criminal conduct." United States v. Pinque, 234 F.3d 374, 378-79 (8th Cir. 2000) (internal quotation omitted).

Although the picture of the young, bikini-clad female is not included in the record that was submitted to us, the parties stipulated at trial that it was taken when the person depicted "was either seventeen or eighteen years of age." As set forth above, Chief Friend introduced the idea of a physical meeting and portrayed both Stephanie and Kim as being very desirous of sexual activity.

Whatever else might be said about the government's efforts in this case, we conclude that they do not approach the level and type of inducement present in the cases on which Myers relies. In <u>Jacobson</u>, for example, the government conceded inducement after two-and-a-half-years of "repeated efforts by two Government agencies, through five fictitious organizations and a bogus pen pal," to explore the defendant's willingness to purchase child pornography. 503 U.S. at 543. The government's actions in <u>Jacobson</u> were particularly pernicious because they not only aroused a sexual interest in the contraband but also attempted to persuade the defendant that obtaining and reading illegal materials would advance a necessary fight against censorship and infringement of individual rights. <u>Id.</u> at 552. Likewise, in <u>Poehlman</u> the Ninth Circuit held that the government's use of "friendship, sympathy and psychological pressure" induced the defendant to attempt to engage in sex acts with a minor. 217 F.3d at 698. That case involved a government agent who posed as a "mother" looking for a "special man teacher" for her three children, but not herself. The defendant initially showed no interest in pedophilia but was persuaded to overcome any inhibitions over the course of a six-month epistolary relationship with the mother, who deftly used the promise of companionship, the threat of rejection, and a host of other manipulative tricks to develop the defendant's interest in her children. <u>Id.</u> at 698-703. And in <u>Brooks</u>, the inducement prong was found to be satisfied when a confidential informant, acting at the government's behest, turned a heroin addict into a drug dealer by threatening to cut off his heroin supply if he did not resell a portion of his drugs. 215 F.3d at 844-45. No such coercive elements are present in this case. <u>Cf.</u> <u>United States v. Pardue</u>, 983 F.2d 835, 841 (8th Cir. 1993) (reversing the district court's finding of entrapment as a matter of law because there was no evidence of coercion or duress and no prolonged effort to induce the defendant to commit attempted murder).

The government did not threaten, coerce, or psychologically manipulate Myers. The promises made to Myers related only to the gratification he would receive through a sexual encounter with an enthusiastic minor. Whether this direct appeal to Myers's

prurient interest was so strong that it crossed the line between mere opportunity and inducement is a question we need not decide because we are satisfied that the government met its burden of showing predisposition. The alacrity with which Myers responded to the criminal opportunity amply demonstrated his willingness to violate the law.[5] Myers argues that this is an insufficient basis to establish his predisposition to engage in sexual acts with minors, contending that the government was required to produce evidence that he acted on those inclinations before the government entered the picture. In support of this view, he cites the Court's observation in Jacobson that "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." 503 U.S. at 549. But that statement must be understood in light of the facts of that case and the Court's subsequent observation that the entrapment defense would have failed if the defendant had "promptly availed himself of [the] criminal opportunity." Id. at 550.

In cases like Jacobson, where a defendant commits a crime only after a lengthy period of government involvement, the fact that the defendant eventually became amenable to criminal activity does not establish the requisite predisposition. This is due to the difficulty of ascertaining whether the response is purely the defendant's or a product of government influence. But when a defendant responds immediately and enthusiastically to his first opportunity to commit a crime, without any period of government prodding, his criminal disposition is readily apparent. We recognized this in one of our earliest cases applying Jacobson. See United States v. LaChapelle, 969 F.2d 632, 635 (8th Cir. 1992) (holding that the defendant was independently

---

[5]We agree with Myers that his ex-wife's testimony concerning his online proclivities and tendency to inquire about female intimate attire is insufficient to establish a predisposition to engage in sex acts with minors. See Jacobson, 503 U.S. at 551 (noting that evidence of predisposition to do an act that is legal is not, by itself, sufficient to show predisposition to commit a crime, because there is a common understanding that people will obey the law).

predisposed to purchase child pornography because of his immediate acceptance of the government's offer); see also Brand, 467 F.3d at 192-93 (recognizing that a defendant's "ready response" to government inducement establishes predisposition); cf. Poehlman, 217 F.3d at 703 (concluding that the defendant's eventual response did not establish predisposition because the government's sustained inducement may have made him willing to break the law).

One searches the record in vain to find a moment when Myers resisted or hesitated when confronted with the opportunity to have a sexual encounter with a minor. Myers met Stephanie in a romance chat room and quickly learned that she was fourteen years old. Nevertheless, he showed no reluctance to engage in sexually explicit conversation and asked about her undergarments. Myers initiated the second chat—in which Chief Friend first appeared under the pseudonym "Kim"—raised the subject of a physical meeting, and steered the discussion toward sex. Kim subsequently introduced the subject of her age on a number of occasions, but Myers did not appear to give the issue any serious consideration. Further, without any suggestion or encouragement from Kim, Myers sent a four-minute video of himself masturbating. These actions indicate that Myers "readily availed himself of the opportunity to perpetrate [a] crime." Mathews, 485 U.S. at 63. A reasonable jury therefore could have concluded that, even if induced, Myers was predisposed to violate the law. Accordingly, the district court did not err in finding that Myers was not entrapped as a matter of law.

III.

Myers also argues that the evidence was insufficient to support his conviction for enticing a minor to engage in criminal sexual activity. We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the jury's verdict. United States v. Molsbarger, 551 F.3d 809, 812 (8th Cir. 2009). The verdict will be upheld if there is any interpretation of the evidence that could lead a reasonable jury to find the defendant guilty beyond a reasonable doubt. Id.

Under 18 U.S.C. § 2422(b), a person may be convicted if he "knowingly persuades, induces, entices, or coerces" a minor to engage in criminal sexual activity or attempts to do so. Myers's chief argument is that no reasonable jury could find that he enticed a minor because it was the government that was doing the inducing. A finding of government inducement, however, does not preclude conviction under § 2422(b). Brand, 467 F.3d at 204 n.21; see also United States v. Blazek, 431 F.3d 1104, 1107 (8th Cir. 2005) (rejecting the defendant's contention that the evidence of enticement was insufficient because the government agent enticed him to commit the offense). Even if the jury believed that the government induced Myers to act, there was sufficient evidence that he attempted to entice a minor to engage in criminal sexual activity.

A reasonable jury could have found that Myers knew he was in a romance chat room and believed he was communicating with a fourteen-year-old girl. Within minutes of meeting a person he believed to be a minor, Myers asked if she had a boyfriend and what type of underwear she was wearing. Later, he talked about cuddling, told her that he wanted to be in a relationship, and assured her that "when two people like each other age shouldn't be a factor." Although the government made the initial, oblique reference to a physical meeting, Myers reintroduced the idea in subsequent conversations and asked if there was any way Kim could be home alone all day. He suggested picking Kim up from school and encouraged her to evade her mother for the purposes of having a sexual liaison. Myers took a substantial step toward completion of the crime by driving two hours to meet Kim while she was purportedly home alone, and the police found two boxes of condoms and a digital camera in the front seat of his truck. That Stephanie or Kim acted as though they were ready and willing to engage in various sex acts does not vitiate Myers's attempted

enticement. Accordingly, a reasonable jury could have found that Myers intended to entice a minor to engage in illegal sex.[6]

## IV.

Finally, Myers contends that the district court erred in admitting a transcript of the internet chats. Because Myers did not object to the admission of this evidence, we review only for plain error. See United States v. Westbrook, 896 F.2d 330, 334 (8th Cir. 1990). Chief Friend testified that the chats were cut and pasted into word processing files, and Myers argues that the resulting transcripts were untrustworthy because they could have easily been altered. Myers also points out that at least one possible inaccuracy was identified at trial, insofar as the transcripts appeared to contradict Chief Friend's testimony that Myers initiated contact.

Other courts have rejected the argument that cut and pasted transcripts of internet chats are inherently untrustworthy and therefore inadmissible at trial. See, e.g., United States v. Gagliardi, 506 F.3d 140, 151 (2d Cir. 2007). Chief Friend testified that the transcripts were accurate, and Myers used many favorable portions of the transcripts in his own defense, as he has continued to do on appeal. To the extent that there were any inconsistencies between trial testimony and the transcripts, Chief Friend offered a plausible explanation for the discrepancies and the jury heard

---

[6]In conjunction with his argument on the sufficiency of the evidence, Myers argues that Jury Instruction No. 18 could have misled the jury because it stated that the government did not need to prove that Myers was communicating with a minor, only that he believed he was doing so. Myers argues that the jury could have misinterpreted the instruction to allow conviction solely on the basis that he knew he was communicating with a minor—without requiring any finding of enticement. Myers did not object to the language in Instruction No. 18, and it suffices to say it was not plain error to give the instruction. See United States v. DeRosier, 501 F.3d 888, 898 (8th Cir. 2007) (standard of review).

arguments from both sides.  Accordingly, the district court did not err, and certainly did not plainly err, in admitting the transcripts.

The judgment is affirmed.

_____