# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3868

_____

United States of America

*Plaintiff - Appellee*

v.

Dontavious Cunningham

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: June 9, 2017
Filed: August 1, 2017
[Unpublished]

_____

Before WOLLMAN, GRUENDER, and SHEPHERD, Circuit Judges.

_____

PER CURIAM.

A jury convicted Dontavious Cunningham of unlawful possession of a firearm as a previously convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The district court[1] imposed a 120-month term of imprisonment, the maximum sentence authorized by statute. Cunningham appeals his conviction and sentence. We affirm.

After being stopped by Iowa police officers in early October 2015 for driving violations, Brandon Blocton agreed to work as a confidential informant in exchange for consideration on pending charges and associated fines. Blocton informed Special Agent Matt Anderson of the Iowa Division of Narcotics Enforcement that Cunningham's brother, Mark Cunningham (Mark), was manufacturing and selling methamphetamine. Blocton introduced Anderson (acting in an undercover capacity) to Mark on October 13, following which Anderson purchased methamphetamine from Mark on six separate occasions over the next several weeks. Mark told Anderson on November 30 that he would be in Alabama for a week but would return to Iowa thereafter. Mark's girlfriend Amber Walton, Blocton, and Blocton's then-girlfriend Christina Midlang rode along with Mark to Alabama.

Blocton informed Anderson on December 8 that Mark had returned from Alabama, accompanied by Cunningham. Blocton also told Anderson that the brothers had brought "ice" methamphetamine and three firearms with them from Alabama. Blocton sent Anderson photographs of the drugs and two of the firearms, explaining that he could not photograph the third firearm because Cunningham was carrying it on his person. Anderson spoke with Mark later that day and arranged to purchase ice methamphetamine. Anderson also obtained a no-knock warrant to search Mark's residence, as well as Mark himself, Walton, and Cunningham.

On the evening of December 8, Anderson went to Mark's residence and purchased ice methamphetamine from Mark while Cunningham was present. Officers

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa.

executing the search warrant shortly thereafter observed Mark standing in the kitchen, placing crushed pseudoephedrine pills into a plastic bottle. Officers arrested Mark. Cunningham was sitting on the couch holding cash in both hands when officers entered the apartment. Trooper Andrew Albright handcuffed Cunningham and searched him, recovering a loaded Bersa .380 caliber pistol from Cunningham's left front pants pocket, as well as a bag of marijuana; several plastic baggies, some empty and some containing a white powder; and a drug ledger from his other pants pockets. Officers also seized the $491 in cash that Cunningham had dropped on the couch. The search of Mark's residence resulted in the recovery of a small quantity of methamphetamine, materials used to manufacture methamphetamine, a digital scale, and $770 in cash from the controlled buy. Officers also recovered from the bedroom closet two additional loaded firearms that matched the photograph taken by Blocton—a silver Davis Industries .380 caliber pistol and a black Jimenez Arms 9mm pistol.

Cunningham was charged with unlawfully possessing the Bersa pistol, having incurred three or more violent or drug-related felony convictions, namely, a Texas burglary conviction and two Alabama controlled-substance-distribution convictions. The case proceeded to trial, during which Cunningham testified in support of an entrapment defense. Over the government's objection, the district court instructed the jury on entrapment. The jury found Cunningham guilty.

Cunningham's PSR calculated a base offense level of 20 and recommended a 2-level enhancement under § 2K2.1(b)(1)(A) of the U.S. Sentencing Guidelines Manual (U.S.S.G. or Guidelines) because the offense involved between three and seven firearms, a 4-level enhancement under § 2K2.1(b)(6)(B) because the firearm was possessed in connection with another felony, and a 2-level enhancement under § 3C1.1 for obstruction of justice because Cunningham perjured himself during his trial testimony. Based upon a total offense level of 28 and a criminal history category of V, the PSR calculated a Guidelines sentencing range of 130 to 162 months'

imprisonment. Because the Guidelines range exceeded the maximum sentence of 120 months authorized by statute, however, the Guidelines range became 120 months. U.S.S.G. § 5G1.1(a). The district court overruled Cunningham's objections to the PSR and sentenced him to 120 months' imprisonment.

Cunningham first contends that the evidence was insufficient to support his conviction, arguing that he was entrapped into possessing the gun by Blocton, who was working as a government informant. We review *de novo* the sufficiency of the evidence to support a conviction, "viewing the record in the light most favorable to the jury's verdict." United States v. Myers, 575 F.3d 801, 808 (8th Cir. 2009). We will reverse a conviction for insufficient evidence only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. See Myers, 575 F.3d at 808. In conducting this review, we "do not weigh the evidence or assess the credibility of the witnesses." United States v. Spears, 454 F.3d 830, 832 (8th Cir. 2006).

"A valid entrapment defense involves two interrelated elements: government inducement of criminal conduct and an absence of criminal predisposition on the part of the defendant." Myers, 575 F.3d at 805. The defendant bears the initial burden of presenting some evidence that "a government agent 'implant[ed] in an innocent person's mind the disposition to commit a criminal act.'" United States v. Ardrey, 739 F.3d 1189, 1191 (8th Cir. 2014) (citation omitted); see also Myers, 575 F.3d at 806 (noting that inducement must be "something more than an opportunity to break the law"). "When, as here, the government has not conceded the issue of inducement, the defendant's burden ought not be cast aside lightly." Myers, 575 F.3d at 806 & n.4. Inducement may take various forms, including pressure, persuasion, threats, and coercive tactics, among others, but the government's use of "artifice, stratagem, and undercover agents" does not generally amount to inducement. See id. at 806 (noting that it is "well settled" that the government may use these tactics "in its pursuit of criminals"). A defendant "cannot establish inducement merely by showing that the

government solicited, requested or approached to engage in criminal conduct." Id. Because factual determinations regarding government conduct and its effect upon a defendant are required, "[t]he question of entrapment is generally one for the jury, rather than for the court." Id. at 805 (citation omitted). "Where the evidence is in conflict, we leave the jury's verdict undisturbed." Id.

As evidence of inducement, Cunningham testified that Blocton arrived at Mark's apartment with the Bersa pistol on December 8, the day that the search warrant was executed. Cunningham testified that Blocton repeatedly asked him to hold the pistol and that he repeatedly declined to do so. Eventually, according to Cunningham, Blocton physically blocked him from leaving Mark's apartment, asked him once again to hold the pistol, and offered him money in exchange. Only after this coercion and intimidation did Cunningham agree to hold the firearm. The government, however, called Blocton, Walton, and Midlang, all of whom testified to seeing Cunningham with one or more of the three firearms at his residence in Alabama, at a hotel room in Alabama, or at Mark's apartment in Iowa. Blocton also testified that he photographed two of the firearms recovered from Mark's apartment but was unable to photograph the Bersa pistol because it was in Cunningham's possession.

The crux of Cunningham's argument is that his testimony that he was induced to possess the firearm was more credible than that of the government's witnesses, and that the evidence was thus insufficient to support his conviction. This argument is unavailing, for "[i]t is axiomatic that we do not review questions involving the credibility of witnesses, but leave [those] questions to the jury." United States v. Dabney, 367 F.3d 1040, 1043 (8th Cir. 2004); see also United States v. Bugh, 701 F.3d 888, 894 (8th Cir. 2012) (affirming a jury's rejection of the defendant's entrapment defense because it was "a determination best left to the jury"). Moreover, where the evidence regarding entrapment "is in conflict, we leave the jury's verdict

-5-

undisturbed." Myers, 575 F.3d at 806. Accordingly, we reject Cunningham's contention that the evidence was insufficient to support his conviction.[2]

Cunningham next argues that the admission of evidence that he possessed and sold drugs in Alabama was improper under Federal Rule of Evidence 404(b) because it was not relevant to a material issue at trial and its prejudicial effect outweighed its probative value. The government responds that this evidence is not subject to Rule 404(b) because it is intrinsic evidence of the felon-in-possession offense. We review the district court's evidentiary ruling for abuse of discretion. See United States v. Thomas, 760 F.3d 879, 883 (8th Cir. 2014).

*Res gestae*, or intrinsic evidence, is "evidence of wrongful conduct other than the conduct at issue . . . offered for the purpose of providing the context in which the charged crime occurred." United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006). Such evidence is admissible because it "'completes the story' or provides a 'total picture' of the charged crime," id. (citation omitted), and may help to "fill the gaps in the jury's understanding" of the charged crime, United States v. Young, 753 F.3d 757, 770 (8th Cir. 2014). "[Intrinsic evidence includes both evidence that is inextricably intertwined with the crime charged as well as evidence that merely 'completes the story' or provides context to the charged crime." Young, 753 F.3d at 770 (citation omitted). Rule 404(b) does not apply to intrinsic evidence. See Johnson, 463 F.3d at 808.

We agree with the government that the challenged testimony was intrinsic evidence of the felon-in-possession offense. It put the initial investigation and Cunningham's eventual involvement in context, it provided the jury a complete

---

[2]Because Cunningham has failed to show inducement, we need not address whether the government established that he had the predisposition to commit the offense. See United States v. Abumayyaleh, 530 F.3d 641, 647 (8th Cir. 2008).

picture of the charged crime, and it helped explain Cunningham's motive for possessing the firearms. See United States v. LaDue, 561 F.3d 855, 857 (8th Cir. 2009) (noting that "[a] jury is entitled to know the circumstances and background of a criminal charge" to "provid[e] the context in which the crime occurred" (citation omitted)); United States v. Claxton, 276 F.3d 420, 423 (8th Cir. 2002) (finding no abuse of discretion where district court admitted evidence of drug-related activities during trial on felon-in-possession charge, given the "close and well-known connection between firearms and drugs" (citation omitted)).

During their search incident to Cunningham's arrest, the officers recovered not only the Bersa pistol, but empty plastic bags, a drug ledger, and almost $500 in cash, all of which were consistent with drug distribution. Blocton, Walton, and Midlang all testified that Cunningham was in possession of both firearms and illegal drugs in Alabama and that he and Mark transported both firearms and illegal drugs from Alabama to Iowa. The drug-related evidence thus provided context and background for the firearm charge and helped explain Cunningham's motive for possessing a firearm. See Claxton, 276 F.3d at 423 ("Firearms are known 'tools of the trade' of narcotics dealing because of the dangers inherent in that line of work." (citations omitted)). Because the drug-related evidence was intrinsic to the crime charged and was neither irrelevant nor overly prejudicial, the district court did not abuse its discretion by admitting the challenged testimony.

Finally, Cunningham argues that the district court erred in applying a 3-level enhancement under Guidelines § 2K2.1(b)(1)(A) based on a finding that he possessed three firearms. He concedes that he possessed the Bersa pistol on which the charged offense was based, but he argues that the testimony regarding the other two firearms attributed to him was inconsistent and incredible. The district court did not clearly err in attributing to Cunningham the Bersa pistol, as well as the Jimenez Arms and Davis Industries pistols recovered during the December 8 search. See United States v. Vega, 720 F.3d 1002, 1003 (8th Cir. 2013) (standard of review). Photographs of

the Jimenez Arms and Davis Industries pistols were admitted into evidence at trial, and the government's witnesses testified to seeing Cunningham in possession of one or both of those firearms. Cunningham's argument amounts to an attack on the government's witnesses' credibility, the determination of which we leave to the jury. See Dabney, 367 F.3d at 1043-44.

The judgment is affirmed.

————————————————