# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1248
_____

United States of America,

*Plaintiff - Appellee,*

v.

Darren Wade Lasley,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: November 17, 2022
Filed: August 23, 2023

_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Darren Lasley was convicted by a jury of enticing a minor to engage in sexual activity. *See* 18 U.S.C. § 2422(b). The charge arose from Lasley's response to an online advertisement and his dialogue with an undercover detective who posed as a

fourteen-year-old girl. At trial, the district court[1] declined Lasley's request to instruct the jury on the affirmative defense of entrapment, and Lasley appeals that decision. We conclude that the evidence was insufficient to warrant the requested instruction, and therefore affirm the judgment.

I.

The investigation began when Andrew Evans, a detective in the Boone County Sheriff's Office, posted an advertisement in the "Casual Encounters" section on the website Craigslist. Evans testified that the Casual Encounters section was primarily used for people to arrange sexual encounters.

Craigslist required users to click a link to confirm that they were at least eighteen years old before they posted an advertisement with Casual Encounters. Despite this purported age verification, Evans testified that "Craigslist Casual Encounters was notorious for online sexual predators . . . using [it] to try to talk to minors and other children and commit crimes."

Detective Evans posted the advertisement on June 14, 2017, and entitled it "Home alone and bored - w4m [women for men]." The advertisement read, "Heyy guys out of school for the summer and soooo bored :( just lookiing for some cool boys to chat with...HMU [hit me up] if your not crazy lol [laugh out loud]."[2]

_____

[1]The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

[2]We reproduce the text of the communications between Detective Evans and Lasley with original spelling and punctuation except where indicated.

-2-

A number of users responded to the advertisement. Craigslist removed the post after twenty-four hours in response to reports from users that the person who posted the advertisement was a minor.

At 10:03 a.m. on June 14, Lasley responded to the advertisement. He asked Abigail if she was in college. She informed him that she was "getting ready to start high school finally :)." Lasley asked Abigail her age; Abigail responded that she was fourteen years old. Throughout the discussions, Detective Evans acted as "Abigail," and we will refer to "Abigail" as the party making the communications.

After stating that she was fourteen years old, Abigail told Lasley "if thats 2 young for u thats ok I understand." Lasley responded, "I didn't necessarily say that lol but what you put up your ad for then?" Abigail replied she had posted the advertisement because she had "always kinda been attracted to older guys," but did not "know any older guys besides my teachers."

After a few more messages in the same conversation, the two exchanged photographs. Evans sent Lasley a low-quality photograph of a Boone County Sheriff's Office employee who was twenty-four years old. Lasley replied "you look cute tho def don't look 14 lol." Abigail responded "yep 14 I am."

The two continued to exchange messages that day. Abigail told Lasley that she was "kind of a wild childlol" who "love[s] to have fun and some of my moms wine when she is not around lol." After about two hours of messaging, Lasley asked Abigail "[w]hat's typically moms work schedule when you can talk or whatever?" Abigail did not reply, and four hours later, Lasley messaged "[d]isappear on me?"

On June 15, Abigail replied to Lasley's message, and the two began communicating again. Lasley suggested that they "drink some of your moms wine

and hang out." Abigail replied that her mom "was drinking it last nite dont know if any left or not."

Lasley asked Abigail "[w]hat you got in mind then?" Abigail responded she was "up for bout anything." Lasley said "I'm up for whatever myself just trying to feel you out what your up for." Abigail asked "how u plan on feeeling me out," and Lasley responded "[w]as that suppose to be like a sexual dirty comment?" Abigail said "maybe." Lasley told Abigail "[d]on't be shy now lol you can tell me whatever."

Abigail then asked Lasley if he had ever been with a younger girl, and Lasley told Abigail "most girls I've been with all younger but can't say 14 lol I think youngest is 19." After Abigail reaffirmed that she was fourteen years old, Lasley asked her whether she had ever been with an older man, and Abigail said "yes 1 time like have sex with right."

Lasley responded "[y]es have sex with, so your not a virgin :) how old was he then?" Abigail told Lasley that he was thirty-five years old and a family friend. Lasley told Abigail "you sound like could be a good time," and "I could show ya a few things." Abigail replied that Lasley would have to "promis to never, never tell," and Lasley responded "duh obviously wouldn't tell."

Abigail then asked Lasley "what stuff u wanna do," and Lasley replied "I mean just can kinda go with it, whatever your comfortable with I've pretty well done it all." Abigail said she was "cuious bout everything" but "cant get pregnant."

Lasley asked, "Curious about everything meaning your open to anything? But yes don't worry there no way I can do that either not gonna happen." Lasley then clarified "[y]our not gonna get pregnant is what I meant tho cant be having that." Lasley then asked again "when you want to hang out?," and Abigail did not reply immediately.

On Friday, June 16, Abigail messaged Lasley, "[h]ey u what's up," and Lasley replied "[n]ot much just got done mowing lol exciting you?" Abigail told Lasley she "[j]ust got outta shower." Lasley said "to bad couldn't have joined ya." Abigail told Lasley she and her mom were driving to Kansas City for the weekend, and Lasley told Abigail "don't let mom figure out that your talking to a 27 year old."

On June 18, Lasley messaged Abigail to ask how the weekend was, and Abigail replied on Monday, June 19. Lasley asked whether she had "anything going on today or this week?" Abigail said she was "hoping sumthing comes up." Lasley said that "doesn't really help me understand what your thinking or wanting."

Abigail responded "what do u want and maybe I want to try it." Lasley replied "your the one the posted the ad here so obviously you had something in mind when you out this out there but I'd say something along the lines of hanging out and showing you a good time." Abigail said "true I did post lol but was bored at the time an did not really know what i wanted to do....like playing cards and stuff lmao."

Lasley responded "your killing me yeah play cards like maybe strip poker." Abigail replied that she "better wear lots of clothes," and Lasley said "no you better not cheat and do that I was thinking just no clothes at all." Abigail asked "if dont wear any clothes than how do we win silly boy :) u mean u wanna see naked." Lasley said "you can wear bra and g string that's it lol and yes I think I would like to see that ;) would you not?" Abigail asked Lasley if she would buy him a thong since she did not own any, and Lasley said he would.

Lasley then told Abigail "this means we actually have to meet if I'm gonna get ya any or any of this stuff we talk about is ever gonna happen." Abigail told Lasley she was "pretty great at sneaking away" from her house. Lasley asked when Abigail's mom would be "gone next or when want to do this?"

Abigail asked "how far u wanna go?"  Lasley replied "[w]hat you mean how far wanna go?"  Abigail said "u just wanna come over and play strip poker...is that it??"  Lasley responded "that'd be fine."  Abigail replied that she had "girl stuff 2 worry bout."  Lasley responded that "I was kinda joking about that part, we can do whatever tho just kinda go with it and whatever we're comfortable with."

Abigail said she did not "like surprises" and liked "looking foeard 2 stuf lol" but had to worry about her "period or getting pregnant."  She then told Lasley "i get off my period like wed or thur."  Lasley replied "[o]h my god lol maybe first time we just kinda chill then maybe mess around a lil don't have ti do a lot so tha way you feel more comfortable and if we hit it off a lil the can do other stuff eventually."

Abigail asked Lasley "whats ur definition of messing around a little," and Lasley answered "we can take it slow if you would like maybe just make out little feel on each other little bit maybe finger you if like or can wait on that."  Abigail told Lasley she was "ok with making out and fingering so start with," and she would check her mother's work schedule and let Lasley know when she would be available.

At 9:44 a.m. on Tuesday, June 20, Lasley messaged Abigail.  The two talked throughout the day.  Abigail mused that she was fourteen years old now, and that she could move out of her mother's house at age seventeen.  Lasley asked Abigail if she had checked her mother's work schedule.  Abigail told Lasley she was "thinking Thursday" since her mother worked that day.  Lasley replied "just let me know for sure or is that a for sure?"  Abigail did not reply.

Lasley messaged Abigail again on Wednesday, June 21.  Abigail told Lasley that "it looks next Wed am mom works Out of town."  Lasley replied that he "may be out of town" that day, and asked "does tomorrow not work then?"

-6-

Later that day, Lasley asked Abigail "[w]hy don't you sneak out tonight since you said your good st that and let's hang out for a bit?" Abigail agreed, and she told Lasley she would let him know when she was ready to sneak out.

Abigail told Lasley she was "looking forward to finally meet u," and Lasley responded "[y]up me too. Question...have you ever given head to a guy?" Abigail said "1 time u want head," and Lasley responded "yeah kinda if you want?"

At 11:19 p.m., Abigail told Lasley that her mother was asleep, and asked him to meet her at 5612 St. Charles Road, the address of a gas station near her house. When Lasley arrived there, Abigail messaged him that she had given him the wrong address, and was actually at the gas station on the other side of the highway. Lasley drove to the new location. When he arrived there, officers arrested him.

At trial, Detective Evans explained that the first address given to Lasley was a "dummy location." Once Evans was notified Lasley had arrived at the dummy location, he gave Lasley the second address where he and other officers waited to arrest Lasley. Evans testified that this procedure gives suspects "another opportunity on the night that they're meeting to leave, to back out, to not go meet a 14-year-old child for the purpose of sexual contact."

A grand jury charged Lasley with enticement of a minor to engage in unlawful sexual activity, in violation of 18 U.S.C. § 2422(b). At trial, Lasley proposed a jury instruction on the affirmative defense of the entrapment, but the district court declined to give the instruction. The jury returned a guilty verdict, and the district court imposed the statutory minimum term of 120 months' imprisonment. Lasley appeals, and challenges the district court's denial of the entrapment instruction. We review the court's ruling *de novo*. *United States v. Shinn*, 681 F.3d 924, 929 (8th Cir. 2012).

II.

The government legitimately may investigate criminal activity through the use of undercover agents who provide an offender with an opportunity to commit an offense. *Jacobson v. United States*, 503 U.S. 540, 548 (1992). "Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 441 (1932). But the government "may not originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime." *Jacobson*, 503 U.S. at 548. The affirmative defense of government entrapment guards against such overzealous prosecutions. The defense consists of "two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988).

A district court must decide whether the evidence in a particular case warrants submitting the issue of entrapment to a jury. In some situations, the entrapment question can be decided as a matter of law because the evidence does not justify an instruction. A "defendant is entitled to an entrapment instruction only if there is sufficient evidence from which a reasonable jury could find that the defendant was entrapped." *United States v. Combs*, 827 F.3d 790, 796 (8th Cir. 2016). If there is such evidence, then the issue is "for the jury as part of its function of determining the guilt or innocence of the accused." *Sherman v. United States*, 356 U.S. 369, 377 (1958). The defendant bears the initial burden of production, and "must first produce sufficient evidence that the government induced him to commit the offense." *Combs*, 827 F.3d at 796.

Evidence that investigators "afforded an opportunity" for an offender to entice a minor to engage in sexual activity is insufficient to warrant a jury instruction on entrapment. *See Mathews*, 485 U.S. at 66. Inducement that could warrant a jury instruction may include "pressure, assurances that a person is not doing anything

-8-

wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship." *United States v. John*, 27 F.4th 644, 649 (8th Cir. 2022) (internal quotations omitted). We agree with the district court that the evidence here was insufficient for a reasonable jury to conclude that investigators induced Lasley to entice a minor to engage in sexual activity.

The text messages between Lasley and "Abigail" do not show that Detective Evans pressured Lasley to pursue a sexual act with a minor. Lasley contends that "it was Abigail who was driving the discussion," and pressuring Lasley by "repeatedly asking Lasley to say what he wanted to do." Although Abigail did ask Lasley several times what he wanted to do, we do not view that as impermissible "pressure" that supports a finding of entrapment. Lasley had an opportunity to discontinue the conversation, to propose innocent activity, or to suggest sexual activity that would constitute unlawful enticement of a minor.

After Abigail told Lasley that she was fourteen, she told him "if thats 2 young for u thats ok I understand." But Lasley persisted. He repeatedly restarted the communications with Abigail. On one day, he messaged her a second time when she did not respond to an earlier message. He messaged her first thing in the morning on another day to initiate further communications.

Lasley also introduced sexual content into their conversation. Although Abigail did express concern about getting pregnant, she did so after Lasley told her that he had "pretty well done it all." After Abigail stated in one conversation that she had just gotten out of the shower, Lasley told her it was "to bad couldn't have joined ya." When Abigail said she was bored and referred to "playing cards and stuff," Lasley responded "your killing me yeah play cards like maybe strip poker." On the night of their planned meeting, Lasley asked Abigail without prompting whether she had ever performed oral sex.

Lasley also suggested several times that he and Abigail should meet. On June 15, Lasley suggested they "drink some of [Abigail's] moms wine and hang out." After Abigail demurred, Lasley asked again "when you want to hang out?" On June 19, Lasley told Abigail that "we actually have to meet if I'm gonna get ya any or any of this stuff we talk about is ever gonna happen." On June 21, after Abigail told Lasley that she could meet in a week, Lasley suggested that she instead sneak out of her mother's house that night.

Abigail asked Lasley open-ended questions about what he wanted to do. We do not view these communications as repeated attempts at persuasion that could amount to impermissible inducement, for the agent did not propose sexual activity, and Lasley was not pressured to engage further. Rather than discontinue the discussion or propose innocent activity, Lasley suggested digital sex—that he and Abigail could "just make out little feel on each other little bit maybe finger you if like or can wait on that." He later proposed oral sex on his own initiative.

Lasley argues that the government "fraudulently misrepresented" Abigail's age by using a photograph of an adult woman employee of the sheriff's office. He contends that this photograph confused him and induced him "to continue talking to a girl whom he was being told was a minor." Lasley points to prior cases in which investigators used digital images that were designed to look like a minor. *See Shinn*, 681 F.3d at 927; *United States v. Young*, 613 F.3d 735, 739 (8th Cir. 2010). The record does not show whether investigators considered that option in this case. Detective Evans acknowledged that investigative guidelines allowed for the use of a photo of a consenting employee taken when the employee was a minor, but testified that he did not have such a photo available to him.

No matter how old "Abigail" appeared in the image sent to Lasley, she clearly told Lasley that she was fourteen years old before sending the photograph. She repeated her age to Lasley immediately after sending the photograph. She stated her

age clearly on two other occasions. Lasley admitted at trial that he believed Abigail was fourteen years old. Any "confusion" potentially caused by the photograph of a youthful-looking adult woman was dispelled by Abigail's repeated assertions that she was fourteen years old. The use of an adult's photograph, while perhaps making the opportunity more attractive to some potential offenders, does not "fraudulently misrepresent" the key fact—the minor's age—when it is accompanied by the government agent's unequivocal assertions of the minor's age. *See United States v. Mercado*, 53 F.4th 1071, 1082-83 (7th Cir. 2022).

Lasley also contends that the portrayal of Abigail as a "wild child" who previously had sexual intercourse with a thirty-five year old family friend induced him to commit the offense. We question whether a child's description of previous sexual abuse by an adult could "induce" a separate offender to abuse the same child. *See United States v. Anderson*, 55 F.4th 545, 563 (7th Cir. 2022) (St. Eve, J., concurring in part and dissenting in part). And while portrayal of a minor as "sexually precocious" can be a relevant factor in the analysis, such a depiction by itself is not sufficient evidence of inducement. *Young*, 613 F.3d at 747.

Viewed as a whole, the evidence here shows that the government presented Lasley with an opportunity to entice an arguably sexually precocious minor whose appearance was arguably more mature than average. Lasley responded to an advertisement, and broached the topic of unlawful sexual activity with a fourteen-year-old girl. The detective posing as a minor carried on a lengthy dialogue with Lasley, but did not employ the tactics most likely to warrant an entrapment instruction: pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship. Without more, there was not sufficient evidence from which a reasonable jury could find that the government impermissibly induced Lasley to commit the offense. The district court therefore did not err in declining to instruct the jury on entrapment.

The judgment of the district court is affirmed.

_____