# United States Court of Appeals
### For the Eighth Circuit

_____

No. 23-2653
_____

United States of America,

*Plaintiff - Appellee*,

v.

James Dean Hanapel,

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the District of South Dakota - Western
_____

Submitted: March 15, 2024
Filed: August 12, 2024
_____

Before COLLOTON, Chief Judge, ERICKSON and KOBES, Circuit Judges.
_____

COLLOTON, Chief Judge.

A jury found James Hanapel guilty of attempting to entice a minor to engage in sexual activity. *See* 18 U.S.C. § 2422(b). The charge arose from Hanapel's dialogue with an undercover officer who posed as a fourteen-year-old girl. At trial, Hanapel raised the affirmative defense of entrapment. At the close of the

government's case, he moved for judgment of acquittal on the ground that he was entrapped as a matter of law. The district court[*] denied the motion, and we affirm.

## I.

In August 2021, several law enforcement agencies participated in an operation to combat child exploitation on the internet during the Sturgis Motorcycle Rally in South Dakota. As part of the operation, a special agent from the Department of Homeland Security posed as "Journey," a fictitious fourteen-year-old girl whose parents were attending the rally.

The agent created an account for Journey on SKOUT, an internet application that is used for dating and social networking. On Journey's public profile, he represented that she was eighteen years old because SKOUT required users to be no younger. He also included two photographs of "Journey" that were actually pictures of an adult woman associated with law enforcement.

On August 10, 2021, Hanapel sent a message to Journey from an account purporting to belong to "Max Taylor." According to the profile, Max Taylor was a twenty-one-year-old man located in Box Elder, South Dakota. Hanapel asked whether Journey wanted to "hang out." The next day, Journey said "[m]aybe" and provided a telephone number.

On August 12, Hanapel and Journey began to communicate via text message. Hanapel asked whether Journey "[w]ant[ed] some company." Journey said that she did, but she "want[ed] to tell" Hanapel that she was "not 18" and was "just here trying

[*]The Honorable Jeffrey L. Viken, United States District Judge for the District of South Dakota, now retired.

to have fun while my parents are at the rally." Hanapel asked, "How old are you ??" At 3:40 p.m., Journey replied, "14 but turn 15 in a couple months."

Less than one minute later, Hanapel responded, "Yoo I can't talk to you." He added that they could "be friends but nothing more." Journey wrote back: "ok. sorry. i understand. guys my age are pretty lame and you seemed pretty cool. i didn't mean to upset you sorry. you were just so cute." Hanapel reassured her that "[i]t's okay you seem cool I just don't want trouble if you wanna hangout and grab ice cream or catch a movie that's cool but I'd have to meet your parents[.] Because if they got the wrong impression I'm going to jail."

Journey said that she was "not here to get anyone in trouble," and had "met people" on SKOUT "all the time." Hanapel replied, "Oh okay well do you wanna go do something." Journey asked what he had in mind. Hanapel suggested that they could "grab food or watch a movie," and asked what Journey had "done with people before." Journey answered, "a lot....lol [laugh out loud]." Hanapel asked what she meant, and Journey told him to "just use your imagination hehehehe."

Hanapel again asked if Journey "want[ed] some company." She said that it "depends on what you have in mind," because "this is my last night home by myself so i have to be careful on who i choose to hang with so i can make the most of it." Hanapel told her it was "really up to" her whether they met and what they would do. Journey said she "like[s] someone who knows what they want."

Hanapel asked, "Honestly you tryna hook up ?" Journey replied, "up to you maxie." He asked why he was "making all the decisions"; Journey said that he was "older and more experienced." Hanapel asked for Journey's address. She said, "what are you thinking maxxie? look at you trying to be my pick."

Journey then sent a photograph of herself and asked whether Hanapel liked her outfit. In the photo, Journey appears to be holding the camera above her head. She is looking up at the camera, and wearing a sports bra and leggings. Special Agent Berger testified that he sent this photo because he considered it "nonsexual in nature." He testified that the clothing was "consistent with what the temperature was like outside" in mid-August. Hanapel replied that the photo was "[s]exy," and said, "I'm thinking I come over we watch a movie make out and see what happens from there." Journey asked what he "had in mind" because she "may surprise" him. He suggested they "could hook up."

The conversation pivoted to Journey's experiences with other people whom she met on SKOUT. Hanapel asked her how many people she had met, how old they were, and what they did together. Journey answered that she met "a few" people who were older than "Max," and that they did "fun stuff hehehehe." Hanapel asked "[w]hat kind of fun stuff," and Journey replied, "didnt i tell you to use your imagination. im willing to try whatever. you just name it." Hanapel suggested "[s]ex," and asked if she "want[ed] to fuck." Journey asked, "do you?" Hanapel answered, "Yes I'm down." Journey asked whether there was anything that Hanapel "want[ed] to try." He said, "Yeah anal if you['re] down."

The two agreed to meet at a local middle school that night. Hanapel agreed to bring condoms. He drove to the school and was arrested at approximately 7:30 p.m. on August 12. Police found a newly purchased package of condoms in his car. In a post-arrest interview, Hanapel admitted that he traveled to the school to have sex with the girl.

A grand jury charged Hanapel with attempted enticement of a minor to engage in unlawful sexual activity. *See* 18 U.S.C. § 2422(b). At trial, the district court gave the jury the following instruction:

One of the issues in this case is whether Mr. Hanapel was entrapped. The government has the burden of proving beyond a reasonable doubt that Mr. Hanapel was not entrapped by showing either: (1) Mr. Hanapel was willing to solicit a minor before he was approached or contacted by law enforcement agents; or (2) the government, or someone acting for the government, did not persuade or talk Mr. Hanapel into soliciting a minor. In deciding whether Mr. Hanapel was willing to solicit a minor before he was approached or contacted by law enforcement agents, you may consider whether the defendant enthusiastically responded and promptly availed himself of his first opportunity to commit a crime without government prodding. If the government proves either of these beyond a reasonable doubt, you must reject Mr. Hanapel's claim of entrapment. If the government fails to prove at least one of these beyond a reasonable doubt, then you must find Mr. Hanapel not guilty.

The law allows the government to use undercover agents, deception, and other methods to present a person already willing to commit a crime with the opportunity to commit a crime, but the law does not allow the government to persuade an unwilling person to commit a crime. Simply giving someone a favorable opportunity to commit a crime is not the same as persuading him.

While the jury deliberated, Hanapel moved for judgment of acquittal. He argued that the evidence showed that he was entrapped as a matter of law. The district court denied the motion. The jury returned a guilty verdict, and the district court sentenced Hanapel to the statutory minimum term of 120 months' imprisonment. Hanapel appeals and renews his contention that he was entrapped as a matter of law. Viewing the evidence in the light most favorable to the verdict, we consider whether any reasonable jury could have rejected the entrapment defense. *See United States v. Neri*, 89 F.4th 668, 670 (8th Cir. 2023).

## II.

It is "well settled that the government may use artifice, stratagem, and undercover agents in its pursuit of criminals." *United States v. Myers*, 575 F.3d 801, 806 (8th Cir. 2009). The government may not "originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime." *Jacobson v. United States*, 503 U.S. 540, 548 (1992). The affirmative defense of entrapment "guards against such overzealous prosecutions." *United States v. Lasley*, 79 F.4th 979, 983 (8th Cir. 2023).

An entrapment defense has two elements: "government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." *Mathews v. United States*, 485 U.S. 58, 63 (1988). The inducement and predisposition "inquiries are often closely linked, because the need for greater inducement may suggest that the defendant was not predisposed to commit the crime; and conversely, a ready response to minimal inducement indicates criminal predisposition." *Myers*, 575 F.3d at 805. A defendant is entitled to a jury instruction on entrapment if prior to trial he produces sufficient evidence of inducement. *United States v. Young*, 613 F.3d 735, 746 (8th Cir. 2010). If he makes a showing of inducement, the burden at trial shifts to the government to prove predisposition beyond a reasonable doubt. *Id.* at 747.

The district court concluded that Hanapel produced sufficient evidence to warrant a jury instruction on entrapment. But the jury found beyond a reasonable doubt that he was not entrapped. To prevail on appeal, Hanapel must establish as a matter of law both that he was induced and that he was not predisposed to commit the offense. *See Myers*, 575 F.3d at 805-06 & n.4; *United States v. Hinton*, 908 F.2d 355, 357 (8th Cir. 1990).

We begin with inducement. Four factors are relevant: (1) whether the government initiated the contact with the defendant; (2) whether the government introduced the topics of meeting and sex; (3) the effect of the photos sent by the government; and (4) the degree to which the government influenced the behavior of the defendant by portraying the minor as sexually precocious. *United States v. Tobar*, 985 F.3d 591, 593 (8th Cir. 2021); *Myers*, 575 F.3d at 806.

The government did not initiate contact with Hanapel. Hanapel first proposed a meeting with the minor, and he was the first to mention that they could "hook up" and engage in "[s]ex." Hanapel argues that the government introduced the topic of sex when Journey told Hanapel that she wanted to "make the most" of her time at home alone. While Journey's response may have been suggestive, she did not pressure Hanapel to engage in sexual activity or propose sexual activity directly. Hanapel interpreted her message to refer to sexual activity, and he then explicitly suggested engaging in such conduct.

Hanapel's primary argument is that he was induced as a matter of law when Journey sent him an unsolicited photo of herself in a sports bra. He argues that the government sent the "suggestive" photo because he was hesitant to meet Journey. We are not convinced that the photo establishes inducement as a matter of law. Hanapel argues summarily that the photo "speak[s] for itself," but it does not say much about entrapment. Hanapel described Journey as "fully clothed" when he described the photo to police. Far more revealing images have been held insufficient to constitute inducement as a matter of law. *See United States v. Shinn*, 681 F.3d 924, 928-30 (8th Cir. 2012); *Myers*, 575 F.3d at 803, 806. The evidence also does not compel a conclusion that the government sent the photo in response to Hanapel's reluctance. Journey sent the photo in direct response to his message asking for her address. By that time, Hanapel already had asked whether she was "tryna hook up." A reasonable jury could reject Hanapel's contention that the government's use of the photo demonstrated impermissible inducement.

-7-

Nor are we convinced that adding Journey's supposedly "precocious" conduct to the photograph amounts to inducement as a matter of law. While Journey implied that she previously had engaged in sexual activity, she also downplayed her sexual history in a message to Hanapel: "trust me im not that experienced." To the extent that Journey's "photos and behavior portray her as sexually precocious, it is only to a minor degree." *Tobar*, 985 F.3d at 593. There was no inducement as a matter of law.

As for predisposition, we conclude that the evidence was sufficient for a reasonable jury to reject Hanapel's defense. A defendant is predisposed if he readily responds to a government agent's offer of opportunity to commit a crime. *Jacobson*, 503 U.S. at 549-50; *Myers*, 575 F.3d at 807-08. Hanapel argues that he was not predisposed because when Journey first shared her age, he told her that they could "be friends but nothing more."

Initial hesitance to engage in criminal conduct does not establish lack of predisposition as a matter of law. In *United States v. Zupnik*, 989 F.3d 649 (8th Cir. 2021), the defendant also balked at first and told the minor, "I am kinda waaayyy too old for you !" *Id.* at 652. But when the minor said that she was "just tired of boys," the defendant "proceeded to exchange sexually explicit messages with her and plan to meet her in person to engage in sexual acts." *Id.* at 652, 655-56. This court concluded that the exchange included "more than sufficient evidence" of the defendant's predisposition. *Id.* at 656.

Other than his initial reaction to Journey's age, Hanapel showed no hesitation or resistance to meet and engage in sexual conduct. Once Journey told him that "guys my age are pretty lame," and that she "met people on" SKOUT "all the time," Hanapel began to discuss sexual activity. Within four hours after Journey revealed that she was a minor, Hanapel was at their agreed-upon meeting place with newly

purchased condoms. Based on this conduct, a reasonable jury could conclude that Hanapel was predisposed to commit the offense.

The judgment of the district court is affirmed.

_____