# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 25-1843

———————————————

United States of America

*Plaintiff - Appellee*

v.

Jayden Debevec

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of South Dakota - Southern

——————————

Submitted: February 12, 2026
Filed: June 2, 2026

——————————

Before COLLOTON, Chief Judge, BENTON and KELLY, Circuit Judges.

——————————

BENTON, Circuit Judge.

A jury convicted Jayden M. Debevec for attempted enticement of a minor using the internet, in violation of 18 U.S.C § 2422(b). The district court[1] sentenced him to 120 months in prison. On appeal, he argues the denial of his motion for a judgment of acquittal requires reversal or, alternatively, that the admission of Rule

---

[1]The Honorable Eric C. Schulte, United States District Judge for the District of South Dakota.

404(b) evidence warrants a new trial.  Having jurisdiction under 18 U.S.C. § 1291, this court affirms.

## I.

MeetMe, an adult-only dating application, relies solely on self-verified age. Aware that children are targeted there, Richie Berger with the Department of Homeland Security posted an undercover profile in March 2023.  It showed an 18-year-old female, "Zoee," and two photos of an age-regressed officer in a sports bra.

On March 4, Debevec messaged Zoee "Hello."  He asked if she was 18.  She replied she was 15, adding "Promise not to boot me off."  Debevec said "Lol[2] I promise."  He asked if she was "more interested" in older men, noting he needed to be careful about what he said.  Zoee said that she was not attracted to boys her age and that her parents treated her like an adult.

Debevec told Zoee he lived in an RV and that it was quiet on his side of town. Zoee asked whether his RV got cold "By your lonesome."  He replied not cold but lonely.  She said he was "too nice and cute to be lonely."  Debevec complimented her appearance, asking what she liked to do for fun.  She told him to use his imagination.

Debevec asked to see Zoee the next day, stating what they did would be up to her.  She said she was "tingling" and asked if he was "using that imagination."  He asked if she was turned on.  She answered "Maybe" and "Are you?"  Debevec replied he did not get turned on by texting and would rather see her in person.

Zoee asked Debevec for his number.  He gave it.  She texted him.  He said "Can I see more pics of you?"  Zoee replied she needed to be careful because she

---

[2]Explained at trial as "laugh out loud."

was 15. She sent a picture of a fully clothed teenager. He thanked her "for sending a clean pic."

Debevec suggested taking Zoee to his office, adding "It would be just us." She said that made her "tingly." He said: "Maybe show me how mature you actually are." Zoee asked: "Is there anything or any way you want me to be." He replied that she could dress as she liked, though "less is always better."

Zoee said she wanted to avoid surprises and did not want to waste her time. Debevec texted that whether things became "dirty" depended on how things went. She asked what would happen if things went well, adding he was "probably way more experienced." He said he would "let nature take its course," was "good with my tongue," and "I like to kiss and use it for other things."

Zoee said she was "nervous" and wanted to "know about protection." He replied: "We would see if it went that far." She told him to text the next day if he was still interested. He said he would and asked for her address, which she did not give. He later texted, "Good night beautiful."

The next day, Debevec texted, "Good morning." Zoee did not respond. Four hours later he texted: "You ready for a fun time today?" She did not reply. About an hour later, he sent a shirtless picture. Zoee replied two hours later. She asked what they would do. In nine seconds, Debevec texted, "Whatever you want." Zoee repeated she was 15 and would feel more comfortable if he explained the plan. He replied he would rather tell her in person and that he did not want to be labeled "a child molester." She assured him she would not say anything. He escalated the conversation:

> Debevec: Well I would ask to come to you and we would meet them we would sit down and talk then I would reach in and kiss you. From there I would ask if I could remove your pants. And pull aside your panties. I would move my mouth down and lick you. From there I

would reach my hands up and grab your breasts. Is this more of what you are talking about.

Zoee: now Im getting tingly

Debevec: I would pull you up and have you sit on my face as I'm squeezing your butt

Debevec: Show me how tingly you are getting

Zoee asked Debevec to bring condoms because she "cant be 15 and pregnant." He said he did not need them because he had a vasectomy, which made his sex-drive "sky rocket." She replied, "whats that?" He explained the procedure. She asked him to bring "claw drinks" and "licorice." He expressed concern that she might be a cop and that the situation "sounds like a trap."

Debevec asked how she felt about "anal," "a blow job," and whether she had ever "swallowed cum before." She stated that she had limited prior sexual experience but was willing to try new things.

Zoee sent Debevec the address to a nearby park and described what she would be wearing. Debevec asked if she could send "more pics of you." Zoee sent another picture of a fully clothed teenager.

When Debevec arrived, officers arrested him and searched his car, finding a cell phone. They confirmed the phone had been used to text Zoee. At the Homeland Security office, Debevec admitted initiating the sexual conversation and that Zoee never spoke sexually to him.

At trial, the government introduced Debevec's January 2023 Amazon search history, including the terms "loli hentai," "hentai loli," and "lolicon." David Hohn, with Homeland Security, testified that "'loli' is commonly a shortened version of the word 'lolita,' which is a common search term in child pornography cases." He added that "hentai" refers to "Japanese cartoons that are generally sexual in nature

-4-

and revolve around characters that are either young" or "drawn to look very young or are teenage."

The government also introduced a WhatsApp conversation between Debevec and an adult woman—occurring February 22 to March 5—where they discussed sexual activity in exchange for money. The internet searches and WhatsApp conversation were admitted over Debevec's objection.

Debevec requested a jury instruction on entrapment, which the district court gave. The jury also received a limiting instruction on the Amazon searches and the WhatsApp conversation.

Before the verdict, Debevec moved for a judgment of acquittal, which the district court denied. The jury convicted Debevec. The district court sentenced him to 120 months in prison followed by five years of supervised release. He appeals.

## II.

Debevec argues the district court erred in denying his motion for a judgment of acquittal, claiming the government did not prove he was not entrapped. "This court reviews de novo the denial of a judgment of acquittal, considering the evidence presented at trial in the light most favorable to the verdict and drawing all reasonable inferences in the government's favor." *United States v. Roubideaux*, 112 F.4th 606, 611 (8th Cir. 2024) (internal quotation marks omitted). This court "will reverse only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." *United States v. Zupnik*, 989 F.3d 649, 653 (8th Cir. 2021).

The entrapment defense guards against overzealous prosecutions. *See United States v. Hanapel*, 112 F.4th 539, 543 (8th Cir. 2024). It "has two elements: government inducement of the crime, and a defendant's lack of predisposition to commit the crime." *United States v. Tobar*, 985 F.3d 591, 592 (8th Cir. 2021). "If the defendant establishes inducement, the government has the burden to prove

beyond a reasonable doubt that the defendant is predisposed to commit the crime." ***Roubideaux***, 112 F.4th at 612.

Debevec argues that based on the entrapment instruction, he met his burden to prove inducement. *See* ***Zupnik***, 989 F.3d at 655; ***Roubideaux***, 112 F.4th at 612. The district court made no finding that Debevec was induced. It determined (only) that he presented sufficient evidence of inducement to warrant the entrapment instruction. His burden "ought not be cast aside lightly" when the government has not conceded inducement—which it did not concede here. ***United States v. Myers***, 575 F.3d 801, 806 (8th Cir. 2009).

"Inducement exists when the government implanted the criminal design in the defendant's mind." ***United States v. Young***, 613 F.3d 735, 747 (8th Cir. 2010) (internal quotation marks omitted). Four factors are relevant: "(1) whether the government initiated the contact; (2) the effect of the photos sent by the government; (3) whether the government introduced the topics of meeting and sex; and (4) the degree to which the government influenced the behavior of the defendant by portraying the minor as sexually precocious." ***Tobar***, 985 F.3d at 593.

*Factor 1*. Debevec initiated contact. He found Zoee's profile; it was not directed or addressed to him. He messaged: "Hello."

*Factor 2*. The photos on MeetMe and in the texts—showing a clothed girl in a sports bra, a clothed girl sitting on a rock, and a clothed girl's upper body and face—had little, if any, effect. *See* ***Hanapel***, 112 F.4th at 544 (finding that an unsolicited photo of an undercover officer posing as a fourteen-year-old girl in a sports bra did not constitute inducement, as "[f]ar more revealing images have been held insufficient to constitute inducement as a matter of law").

*Factor 3*. Within 14 hours of messaging Zoee, Debevec introduced meeting for sex. He asked to see her and said, "if you are wondering if things would get dirty or not I would just say really depends on how things go." Four minutes later, he

added: "I am good with my tongue if it helps I like to kiss and use it for other things." The next day, he told her that he would "kiss" her, remove her "panties," "lick" her, "grab your breasts," and "have you sit on my face as I'm squeezing your butt." Some of Zoee's messages were sexually suggestive, but none were sexually explicit. *See id.* 543–44 (finding that the defendant introduced the topic of sex despite the undercover officer stating she wanted to "make the most" of her time, because he "interpreted her message to refer to sexual activity, and he then explicitly suggested engaging in such conduct").

*Factor 4.* Although Zoee told Debevec she had engaged in sexual activity, she downplayed it: "You're probably way more experienced than me," "I'm a little nervous and would like to know about protection and everything," and "Ive tried [to give a blowjob] before. I might not be good." *See id.* at 544 (finding no inducement where the undercover officer implied prior sexual activity while downplaying her experience, stating "trust me im not that experienced"). To the extent Zoee's behavior portrayed her as sexually precocious, it was only to a minor degree. *Cf. Tobar*, 985 F.3d at 593 (finding no inducement and treating an undercover agent's sexually precocious behavior as "minor," despite her posting a sexually explicit ad on a prostitution website).

Sufficient evidence supported the jury's finding that Debevec's enticement of a minor was not induced by the government.

Even if Debevec could establish inducement, the evidence was sufficient to show he had a predisposition to entice a minor. "[P]redisposition 'focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime.'" *Myers*, 575 F.3d at 805, *quoting* **Mathews v. United States**, 485 U.S. 58, 63 (1988). "[W]hen a defendant responds immediately and enthusiastically to his first opportunity to commit a crime, without any period of government prodding, his criminal disposition is readily apparent." *Id.* at 807–08.

Debevec contends he initially believed Zoee was an adult, expressed interest (only) in nonsexual activity, and did not engage in sexual conversation until she persisted with sexual innuendo. To the contrary, Debevec progressively escalated the conversation sexually, while repeatedly acknowledging that she was 15—something she told him four times. Within 31 hours of conversing, he persistently messaged Zoee before she responded, sent an unsolicited shirtless photo, steered the conversation toward explicit sex, and proposed and arranged an in-person meeting. He "showed no reluctance to engage in sexually explicit conversation" and admitted he initiated the sexual conversation and that Zoee never spoke sexually to him. *Id.* at 808 (finding predisposition where, over the course of a week, the defendant repeatedly sent sexual messages to a 14-year-old that progressively became more explicit, sent obscene material, and arranged an in-person meeting).

The evidence was sufficient for a reasonable jury to find that Debevec was predisposed to commit the charged offense. The district court properly denied his motion for a judgment of acquittal.

**III.**

Debevec argues that the district court erred in admitting his Amazon search history and a WhatsApp conversation. This court reviews the district court's admission of evidence under Rule 404(b) for abuse of discretion. *See United States v. Riepe*, 858 F.3d 552, 559 (8th Cir. 2017). "We will not reverse [a conviction] if the Government meets its burden of showing the error was harmless." *United States v. McPike*, 512 F.3d 1052, 1055 (8th Cir. 2008). "An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." *United States v. Langley*, 549 F.3d 726, 729 (8th Cir. 2008).

Rule 404(b) allows the admission of evidence of other crimes or acts of the defendant if the evidence is relevant to establish motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident. *See* **Fed. R. Evid. 404(b)**. Evidence is admissible under Rule 404(b) if:

> (1) the evidence of the bad act or other crime is relevant to a material issue raised at trial; (2) the bad act or crime is similar in kind and reasonably close in time to the crime charged; (3) there is sufficient evidence to support a finding by the jury that the defendant committed the other act or crime; and (4) the potential prejudice of the evidence does not substantially outweigh its probative value.

*Riepe*, 858 F.3d at 560. *See also* **Fed. R. Evid. 403** (allowing the court to exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice). "Rule 404(b) is a rule of inclusion; the district court has broad discretion to admit Rule 404(b) evidence." *United States v. Stefanyuk*, 944 F.3d 761, 764 (8th Cir. 2019).

## A.

Debevec contends that his January 2023 Amazon search history was improperly admitted. He believes that no evidence establishes the purpose of his searches, that they were too remote in time, that there is insufficient evidence that he conducted them, and that they misleadingly suggest an obsession with children that did not exist.

His argument fails. All four elements are satisfied. Debevec's searches are probative of his sexual interest in minors, which is relevant to the intent element of the charged offense. *See United States v. Nordwall*, 998 F.3d 344, 347–48 (8th Cir. 2021) (finding that a defendant's internet searches involving sexually explicit material of minor girls was admissible under Rule 404(b) to prove intent to travel interstate to engage in illicit sexual conduct); *United States v. Chambers*, 642 F.3d 588, 595 (7th Cir. 2011) ("Prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence

of the defendant's motive to commit a charged offense involving the sexual exploitation of children.").

The searches—occurring six weeks before the charged conduct—were similar in kind and reasonably close in time. *See id*; *United States v. Sykes*, 977 F.2d 1242, 1246 (8th Cir. 1992) (finding that a crime committed eight months after the charged offense was sufficiently close in time to satisfy Rule 404(b)).

There was sufficient evidence for the jury to conclude Debevec searched for "Loli"-related videos. The web history appeared in a Cellebrite report generated from the phone he used to message Zoee.

The searches' probative value was not substantially outweighed by a danger of unfair prejudice. They were highly probative of Debevec's sexual interest in minor females.

The district court did not abuse its discretion by admitting the Amazon searches.

## B.

The district court expressed concern about admitting the WhatsApp conversation—between Debevec and an adult woman—but allowed the evidence. It found the exchange relevant as it began two weeks before Debevec messaged Zoee and ended the day after he began communicating with her. He sent the adult woman the same shirtless photo and proposed to meet at the same location. Debevec argues, however, that the conversation was not relevant to his intent to entice a minor. *See Huddleston v. United States*, 485 U.S. 681, 689 (1988) ("Evidence is admissible under Rule 404(b) only if it is relevant. Relevancy is not an inherent characteristic of any item of evidence but exists only as a relation between an item of evidence and a matter properly provable in the case.") (internal quotation marks omitted).

The evidence against him—including his initiation of and continued conversation with 15-year-old Zoee, his repeated attempts to arrange an in-person meeting despite her age, his sexually explicit messages, his traveling to the meeting location, his "Loli"-related internet searches, and his admission that Zoee never spoke sexually to him —is "sufficiently strong for [this court] to conclude that the [WhatsApp evidence] even if improperly admitted, did not have 'a substantial influence on the jury's verdict'" or affect Debevec's substantial rights. *See United States v. Cotton*, 823 F.3d 430, 435 (8th Cir. 2016).

Even if the district court erred in admitting the WhatsApp conversation, any error is harmless.

* * * * * * *

The judgment is affirmed.

KELLY, Circuit Judge, concurring in the judgment.

In my view, whether Debevec was induced to commit the offense of conviction is a close call. On the day Zoee and Debevec planned to meet in person, Debevec signaled that he might back out—and instead of accepting Debevec's change of heart, the evidence showed Zoee repeatedly persisted in her efforts to get Debevec to follow through on their plan. Cf. United States v. Vavra, 127 F.4th 737, 744–45 (8th Cir. 2025) (Undercover agent "gave Vavra multiple opportunities not to continue (such as by telling Vavra . . . 'I totally understand if you decide this isn't right for you'; and that 'If you aren't sure I recommend you don't [come over]'). But Vavra pressed ahead anyway."). Debevec told Zoee that he might not make it and that his car would not start, so Zoee suggested a rideshare. Debevec then said the rideshare app was not working, so Zoee told him to try another. Zoee even asked him to drive the RV he was living in rather than pass on meeting her that day. When Debevec arrived at the agreed-upon meeting place, he was driving his own car— evidence that his earlier statements may well have been invented excuses not to

follow through. As part of her efforts, Zoee also told Debevec he was "playing" her by cancelling, accused him of "acting funny," "seem[ing] strange," "being so weird," and "messing with" her. She told him, "I think you're a liar Jayden," and, "I had so many people I couldve [sic] talked to but I talked to you all night and then again today[.]"

These messages were a continuation of a pattern in Zoee's conduct throughout the conversation, in which Zoee sent suggestive messages to Debevec and chided him when he did not reciprocate. Cf. United States v. Lasley, 79 F.4th 979, 984 (8th Cir. 2023) (finding no inducement where defendant brought up sexual contact on several occasions "without prompting," and the purported minor "demurred" at the suggestion of a meetup). For example, when Debevec suggested they engage in non-sexual activities and asked if Zoee was "ok with that," Zoee told him those activities "sound[ed] kind of boring," were "kind of weird" and "weird[ed] [her] out," and that he "seem[ed] strange." Cf. id. (noting that defendant persisted in sexual conversation rather than choosing to "propose innocent activity"). Debevec, Zoee said, was not doing "what most guys would do." More than once, Debevec apologized to Zoee for not meeting her expectations in his messages, and he concluded one of his most sexually explicit messages by asking for her approval: "Is this more of what you are talking about[?]" Zoee's reply was affirmative: "now Im getting tingly[.]"

According to testimony at trial, the agents involved in this case were trained in the "rules of engagement" when adopting an underage, undercover persona—called a "chatter." Among those rules, the chatter must only "match the level of conversation that has been introduced by a potential suspect," and they may not "chase or pursue" a suspect if that person ends the conversation. Instead, "the potential suspect has to be the individual who reinitiates that conversation." Here, at times, Debevec did not respond to Zoee right away. But Zoee nevertheless prodded him to continue their conversation. Cf. Vavra, 127 F.4th at 744 (Defendant "frequently reinitiated communication after the conversation went dormant."); Lasley, 79 F.4th at 984 (noting defendant "repeatedly restarted the communications"

-12-

after undercover agent claimed to be a minor). Such persistence on the part of law enforcement in this context is cause for concern.[3]

The government is, of course, allowed to use undercover officers in criminal investigations. But it is not permitted to "originate a criminal design, implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime." United States v. Hanapel, 112 F.4th 539, 543 (8th Cir. 2024) (quoting Jacobson v. United States, 503 U.S. 540, 548 (1992)). And a government agent may not induce a person to commit a crime by using "pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship." Lasley, 79 F.4th at 985 (quoting United States v. John, 27 F.4th 644, 649 (8th Cir. 2022)). Here, the government's conduct veers close to the type of "overzealous prosecutions" that the affirmative defense of entrapment is intended to "guard[] against[.]" Hanapel, 112 F.4th at 543.

However, I agree there is evidence the jury could have credited to reach the result it did. Debevec was the first to introduce the topic of meeting in person.[4] And even though Zoee's earlier messages were implicitly sexual, Debevec sent the first explicitly sexual message. The images of Zoee were not sexual, Zoee was not depicted as particularly sexually precocious, and Debevec sent detailed messages describing sexual activity he proposed they engage in. The jury could have found that this evidence tempered the significance of evidence that otherwise suggested

---

[3]The jury sent a question to the court during deliberations on inducement: "Can the jury assume the legality of law enforcement methods, specifically Agent Berger's on-line and text discourse with Mr. [Debevec] has been reviewed by the USA's Office and/or the court and been adjudicated legal prior to this case resulting in an indictment and on to trial?"

[4]It is true that Debevec was the first to message Zoee, but he did so on a social networking application that requires users to be at least 18 years old, and with no indication at that time that Zoee was not herself at least 18 years old.

improper inducement. And because a reasonable jury could have gone either way, Debevec has not shown that he was induced as a matter of law—so we must affirm.[5] See Hanapel, 112 F.4th at 543 ("To prevail on appeal, [defendant] must establish as a matter of law both that he was induced and that he was not predisposed to commit the offense."); United States v. Roubideaux, 112 F.4th 606, 612 (8th Cir. 2024) ("Because the entrapment defense requires factual determinations about government conduct and its likely effect upon a defendant, the question of entrapment is generally one for the jury, rather than for the court. Where the evidence is in conflict, we leave the jury's verdict undisturbed." (citation modified)).

As to the evidence admitted pursuant to Rule 404(b), I agree that admission of the WhatsApp conversation was harmless on this record. But the Amazon searches present a much closer call. The information offered at trial about these searches was limited. The jury heard that Debevec searched on a popular retail

---

[5]Because Debevec failed to establish inducement as a matter of law, we need not address predisposition. But I note that the only evidence presented on predisposition was the set of messages and texts between Debevec and Zoee, including the time span between initial contact and the attempted in-person meeting. (The jury was instructed it could consider the WhatsApp and Amazon searches only in determining Debevec's "intent to commit the crime charged.") The timeline was indeed short, and the conversation became sexual relatively quickly. But the jury could find Debevec was predisposed only if he was willing to entice a minor *before* he was contacted by law enforcement. See Jacobson, 503 U.S. at 549 ("[T]he prosecution must prove beyond [a] reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents."); Hanapel, 112 F.4th at 542 ("The government has the burden of proving beyond a reasonable doubt that . . . [defendant] was willing to solicit a minor *before* he was approached or contacted by law enforcement agents[.]" (emphasis added)); United States v. Zupnik, 989 F.3d 649, 655 (8th Cir. 2021) (same); United States v. Poehlman, 217 F.3d 692, 703 (9th Cir. 2000) ("[T]he relevant time frame for assessing a defendant's disposition comes before he has any contact with government agents, which is doubtless why it's called *pre*disposition."). Debevec was 28 years old at the time of the offense, with no prior criminal record, and law enforcement found no other evidence that he had engaged in or attempted to engage in sexual conduct with minors.

website—not an internet search engine—for "loli hentai," "loli," and "lolicon" videos on a single day months prior to the offense conduct. As the agent explained, "hentai" refers to "cartoons" of young people, which means it is animated, not real. And "lolicon," the agent said, was "dress up." It may be that Amazon offers material for sale that some may find distasteful, but it seems unlikely it would make available for purchase material that is unlawful to possess. In any event, an intent to view otherwise-lawful animated or "dress up" videos is different from an intent to view pornography depicting real minors. Cf. United States v. Nordwall, 998 F.3d 344, 346–48 (8th Cir. 2021) (holding Google search for a "15 year old teen sex video" and for "Really small and young" on a pornography website was admissible as evidence of intent pursuant to Rule 404(b) where defendant had arranged to buy sex from a purported 15-year-old). And here, the government presented no evidence of the results of Debevec's Amazon searches, leaving the jury with little to go on when determining what type of material he intended to find, lawful or otherwise. In reviewing a conviction for possession and receipt of child pornography, we have said that a defendant's *actual* possession of stories depicting sexual assaults of minors was not admissible to demonstrate he "has a particular 'type of interest.'" United States v. Johnson, 439 F.3d 884, 888 (8th Cir. 2006). The evidence here runs a similar risk of misuse. But the district court has broad discretion to admit evidence under Rule 404(b), and "[w]e will reverse a district court's Rule 404(b) ruling only if the evidence clearly has no bearing on the case." United States v. Fechner, 952 F.3d 954, 961 (8th Cir. 2020). Because the Amazon searches had some—albeit limited— probative value, I cannot find an abuse of discretion here.

_____