# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-3491

_____

United States of America

*Plaintiff - Appellant*

v.

Christopher Thomas Condon

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: May 17, 2013
Filed: July 17, 2013

_____

Before WOLLMAN, MURPHY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Christopher Thomas Condon was charged in a one-count indictment with sexual abuse of a minor, in violation of 18 U.S.C. §§ 2243(a) and 1153. Condon filed a motion in limine to preclude the government from introducing into evidence an audio recording of a telephone conversation between Condon and his mother. During the conversation, Condon and his mother discussed whether he should sign a plea

agreement and plead guilty to the charge of sexual abuse of a minor. The district court,[1] "in the exercise of its broad discretion . . . grant[ed] the motion in limine and exclude[d] the audio recording at trial, or any reference to it." Specifically, the court found under Federal Rule of Evidence 403 that although "Condon's admission of guilt [in the audio recording] [was] relevant[,] . . . its probative value [was] substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." The government appeals, arguing that the district court abused its discretion in excluding the evidence. We affirm.

## I. *Background*

Condon, an Indian, was charged in a one-count indictment with sexual abuse of a minor, A.B.D., in violation of 18 U.S.C. §§ 2243(a) and 1153. Under § 2243(c)(1), "it is a defense, which the defendant must establish by a preponderance of the evidence, that the defendant reasonably believed that the other person had attained the age of 16 years."

Following his indictment, Condon filed a motion in limine to "prohibit[ ] the government from introducing into evidence or questioning any witness, including defendant, were he to testify, concerning . . . [a]n audio recording, taken June 25, 2012, of a conversation between the Defendant and his mother discussing whether he should plead guilty." During the telephone conversation, which is approximately 12 minutes in length, Condon discussed various topics, including his children, his girlfriend, a possible name change, and his intent to plead guilty. As to his intent to plead guilty, Condon stated, in relevant part:

> She [(Condon's attorney)] wants me to get off on a technicality. She's
> . . . okay . . . well what I'm saying is she thinks she's going to get me an
> acquittal on a technicality you know. Basically I'm guilty, but in the law

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

there's all kinds of loopholes and you get off on technicalities, but even though I'm guilty, you know, I still run the chance. It's a 50/50 chance for me, you know. And she thinks I have a strong case to argue on a technicality, but I mean Christ I'm guilty, I might as well just plead guilty. Wouldn't you think that's the right thing to do?

Condon initiated the telephone call from the Stutsman County Correctional Center in Jamestown, North Dakota, to his mother who resides in Fort Yates, North Dakota. The Stutsman County Correctional Center permits inmates to make phone calls, but it records such phone calls. Inmates are informed that all calls made from the facility are recorded with the exception of phone calls made to and from defense counsel. The facility maintains a sign near the telephones warning the inmates that all calls are recorded.

In his memorandum in support of his motion, Condon argued, among other things, that the district court should exclude the audio recording of the telephone conversation under Federal Rule of Evidence 403 "because it[s] probative value is substantially outweighed by the danger of unfair prejudice to [Condon]." According to Condon "substantial danger [existed] that the jury could consider [his] statements to be a confession" when, in fact, the audio recording actually revealed that he "had an erroneous interpretation of an affirmative defense and that his statements as to his 'guilt' were simply admissions to engaging in sexual intercourse with A.B.D."

The government opposed the motion in limine, arguing that Condon admitted his guilt to the offense in the telephone conversation and failed to "qualify this exclamation by indicating that his guilt is subject to a defense, technicality or loophole." The government noted that it had the burden of proving its "case beyond a reasonable doubt and that the only issue at question for the jury is one pertaining to the available affirmative defense in the matter." It contended that "[t]he probative value of the admission [was] not unfairly prejudicial to [Condon] because it [was] direct evidence of [Condon's] guilt." According to the government, Condon

"admit[ted] guilt even after explaining to his mother a defense that may be presented at trial. In his admission Condon d[id] not go on to qualify his guilt by exclaiming his belief that the minor was the age of consent." Although the government admitted that admission of the audio recording would prejudice Condon, it maintained that its probative value was not substantially outweighed by the danger of unfair prejudice.

During the hearing on the motion in limine, Condon's counsel explained that Condon was not arguing that he did not have sex with A.B.D.; instead, his defense was "[t]hat he reasonably believed that she was 16 years or older." Specifically, Condon's "contention [was] that [A.B.D.] lied to him about her age, as well as probably [to] more than a dozen witnesses." But Condon's counsel acknowledged Condon's concession that "he had sex with [A.B.D]."

Thereafter, the court expressed its "preliminary thoughts on" the telephone conversation, stating:

> [Condon] certainly admits four or five times that he's guilty, but then he goes on to say, "But my lawyer thinks that there's a technicality that I can get off on," or words to that effect, but he's—he's always talking about guilty, but may get off on a technicality. Now, the technicality I'm—that he's referring to is never identified, but I assume it's that he reasonably believed that [A.B.D.] was 16 years old or more.

Both Condon's counsel and the government agreed that Condon was most likely referring to the affirmative defense in § 2243(c)(1). The court expressed its concern that "if the jury hears that telephone conversation, all they're going to hear is the defendant admitting that he's guilty and some technicality may allow him to walk away—" According to the court, Condon

> knows he's guilty of having sex with an underage girl, but . . . there's nothing in that phone conversation that one can even surmise as to

-4-

whether he reasonably felt that she may have been 16 or older. And he probably didn't even know of the defense at the time he had sex with her . . . .

The government disagreed with the court's suggestion that Condon did not know of the affirmative defense in § 2243(c)(1) at the time of the telephone conversation, stating:

> This is June 25, 2012, Your Honor. He's already prepped for trial at least on one occasion by this time. He knows the defenses. He's talking about it, but he's using terms such as "technicality" and "loophole." I'm assuming that probably when he was discussing this matter with his attorney, she probably used terms that were a little bit more understandable to him, so he's using the terms that he thinks explains what his defense is, but he doesn't go on and say, "Even though I'm"—you know, "Even though I thought she was." No, he doesn't. He says, "I'm guilty." He knows what his out—his defense is, Your Honor. He absolutely knows what his defense is.
>
> I think it should be for the jury to decide how they're going to accept this information. And, you know what, defense has an opportunity to get up, he can talk about his call. Ms. Mitchell[, Condon's counsel,] could talk about it on closing argument, you know, but the information absolutely should go before the jury.

In response, Condon's counsel argued that it was "obvious from the tape that when [Condon] says, 'Well, I'm guilty,' he means he knows that he had sex with her, which he will admit. He knows that he had sex with her." According to counsel, one of the purposes of having a lawyer is to advise the defendant of affirmative defenses, even where the defendant admits to the underlying conduct. The government responded by noting that Condon never said in the telephone conversation that he knew he was guilty of the underlying conduct but "thought she was old enough." The court replied:

Well, that's . . . the way you're hearing it, and Ms. Mitchell hears it a different way, and who knows how a jury would interpret those words? I mean, that's the whole issue that I've got to struggle with. Is it fair to allow a taped conversation into evidence that's as ambiguous as this is? We—you know, I mean, everybody hears what they want to hear from the phone conversation.

The government argued that the jury should get to determine how to interpret Condon's remarks, since "there's two ways to look at this." By contrast, Condon's counsel argued that "the fact that it's not clear is exactly why it shouldn't go in front of the jury."

In preparation for trial, but prior to the discovery of the audio recording, the parties had agreed to stipulate that the DNA recovered in A.B.D.'s underwear belonged to Condon, that Condon was an enrolled member of the Standing Rock Sioux Tribe, and that the purported incident occurred on or within the exterior boundaries of the Standing Rock Sioux Indian Reservation. During the hearing, the government addressed this proposed stipulation, and the following exchange occurred:

> MR. DELORME [for the government]: Well, and again, Your Honor, you know, one thing I wanted to touch on, at the end of Ms. Mitchell's motion in limine, she indicates that Mr. Condon did indicate or admit to having sex with this young lady, and, in fact, he did not. He denied that allegation when the officer talked to him. That issue isn't just cut and dry and closed. It's still something the United States has to present evidence on. Just because the DNA will now show it or just because the defendant might say, "Well, I'll stipulate we had sex so this shouldn't come in," that doesn't mean that the defense is able to then say, "Well, call in."
>
> MS. MITCHELL [for Condon]: But why not? It's—

MR. DELORME: You can't pick and choose, you know, when we still have elements to prove beyond a reasonable doubt.

MS. MITCHELL: Your Honor, we stipulated to the DNA. It's obvious that—

MR. DELORME: We stipulated to the DNA, but he did not admit to having sex with the young lady.

MS. MITCHELL: If Mr. Delorme would let me finish my sentence, I'd be happy to stipulate that he had sex with her, and then the probative—any probative value at all of that phone call goes completely out the window. The only reason Mr. Delorme wants it is because he wants the jury to hear him say, "I'm guilty."

MR. DELORME: I could care less if you stipulated to it, Your Honor, or stand up on top of the building and scream to the highest corners of Bismarck that he had sex with that young lady. I could care less. There's plenty of case law out there. Have one of your law clerks take a look at it. I've referenced a couple of pieces of law in my motion, response, that nothing— there is no such thing as allowing the defense to say, "Well, we want to stipulate to this so the Government can't get in that extra—that prejudicial information over there." That does not work that way. The Government is entitled to put on their case as they see fit. That's still an issue, and it's still an issue I have to prove beyond a reasonable doubt.

Following the hearing, the district court granted Condon's motion in limine, stating:

The Court has on multiple occasions carefully listened to the taped telephone conversation. During the telephone conversation Condon admits to his mother that he is guilty. However, the admissions of guilt are made with the qualification that his defense attorney believes there is a possibility of an acquittal based on a "technicality" or a "loophole," i.e., the affirmative defense that the defendant reasonably

-7-

believed the victim was at least 16-years of age. The taped telephone conversation is replete with references to discussions with his attorney, the plea agreement, the Sentencing Guidelines, and the advisory Sentencing Guideline range that would apply to Condon if he pled guilty versus taking the risk of going to trial.

The problem with the statements of guilt made by Condon is that there are several different ways to interpret the admission. One can reasonably argue that Condon was admitting guilt to all of the essential elements of the crime of sexual abuse of a minor, and that he was fully aware of all of the essential elements after discussions with his court-appointed counsel. One could argue that Condon simply admitted guilt to the essential elements of the crime but he did not acknowledge or admit the absence of an affirmative defense, i.e., a "technicality" or a "loophole." Another possible interpretation was that Condon was admitting that he was guilty in the sense that he had sexual contact with a 14-year old girl, but he conditioned those admissions on the possibility that he may be acquitted at trial because he "reasonably believed" the victim was at least 16-years old. Simply stated, it is unclear whether Condon's admission of guilt relates to all of the essential elements of the crime of sexual abuse of a minor and the abandonment of an affirmative defense to the charge, or whether he is only admitting that he had sex with a 14-year old girl but is insistent on attempting to establish the existence of an affirmative defense at trial.

The differing interpretations that any person may give to the admission of guilt, particularly in light of the affirmative defense that may be available, rests in the eyes of the beholder. The Government essentially takes the position that Condon admitted to the essential elements of the crime and has acknowledged there is no basis for the affirmative defense. Counsel for the defendant has taken the contrary position that Condon acknowledged that he is guilty in the sense that he had sexual intercourse with a 14-year old girl, but Condon and other fact witnesses will attest to the fact the victim represented that she was more than 16-years old at the time. The great unknown is how a jury of 12 persons will interpret the telephone conversation.

* * *

There is no question the admissions made by Condon are relevant. However, the context in which the admissions were made, combined with Condon's discussions pertaining to privileged attorney-client conversations, the terms and conditions of the plea agreement, and the Sentencing Guidelines, all result in the very real possibility that allowing the taped telephone conversation into evidence will result in unfair prejudice to the defendant, a confusion of the issues as it relates to the affirmative defense available under 18 U.S.C. § 2243(c), and misleading the jury. If there was no affirmative defense arguably available, the decision would be easy.

As previously noted, the Court has listened to the telephone conversation multiple times. After repeated reviews of the telephone conversation and careful consideration of the arguments presented by counsel, the Court in its discretion is convinced that Condon's admission of guilt is relevant but its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury. This case hinges entirely on the affirmative defense under 8 U.S.C. § 2243(c). Condon and his defense counsel have acknowledged that he had sexual intercourse with the minor victim. The Court has been informed there are several fact witnesses who will testify that the victim informed others that she was older than 16-years of age. There are conflicting conclusions that any reasonable person could reach after listening to the telephone conversations, particularly in light of the availability of an affirmative defense. The Court in the exercise of its broad discretion will grant the motion in limine and exclude the audio recording at trial, or any reference to it.

II. *Discussion*

On appeal, the government argues that the district court abused its discretion by suppressing or excluding the recorded jail phone call because, regardless of how it is interpreted, the call is highly relevant and probative to the central issue of the case. First, the government maintains that it has the burden of proving the underlying elements of the offense beyond a reasonable doubt and that Condon's admission of

guilt in the recorded jail phone call is direct evidence of at least one element of the crime. Second, the government cites Condon's intent to raise the affirmative defense of mistaken age under § 2243(c). Given these facts, it concludes that either interpretation of the call directly reflects upon either an element of the crime or Condon's affirmative defense. The government also maintains that the district court improperly found that portions of the call were "privileged attorney-client conversations" because Condon shared them with a third party—his mother; therefore, they were no longer privileged and the court should not have afforded any protection to the recorded jail call. And, the government argues that the district court failed to identify how either interpretation of the call could result in a jury reaching a verdict based upon "improper reasoning."

> We review a trial court's evidentiary rulings under an abuse of discretion standard, giving *substantial deference* to a trial court's exclusion of evidence under Federal Rule of Evidence 403 so long as the trial court's exercise of discretion "[does] not unfairly prevent a party from proving [its] case." [*White v.*] *Honeywell*, 141 F.3d [1270,] 1274 [(8th Cir. 1998)] (citations omitted). "We review a district court's decision to exclude evidence for a *clear and prejudicial abuse of discretion*." *Arnold v. Groose*, 109 F.3d 1292, 1296 (8th Cir. 1997) (citation and internal quotations omitted).

*Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 716 (8th Cir. 2001) (emphases added) (first and second alterations in original); *see also United States v. Rabins*, 63 F.3d 721, 726 (8th Cir. 1995) ("Rule 403 grants the trial court the discretion to exclude relevant evidence when its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. Fed. R. Evid. 403. We accord great deference to the District Court's application of the Rule 403 balancing test, and [we] will reverse only if the Court committed a clear abuse of discretion."). "Absent an abuse of discretion, this Court

will not substitute its judgment for the judgment of the district court." *Clark v. Martinez*, 295 F.3d 809, 812 (8th Cir. 2002).

Federal Rule of Evidence 403 provides:

> The court may exclude relevant[2] evidence if its probative value is substantially outweighed by a danger of one or more of the following: *unfair prejudice*, *confusing the issues*, *misleading the jury*, undue delay, wasting time, or needlessly presenting cumulative evidence.

(Emphasis added.) "[C]ertain circumstances call for the exclusion of evidence which is of unquestioned relevance." Fed. R. Evid. 403 advisory committee's note. The district court must "balanc[e] the probative value of and need for the evidence against the harm likely to result from its admission." *Id*.

"Unfair prejudice under Rule 403 means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Firemen's Fund Ins. Co. v. Thien*, 63 F.3d 754, 758 (8th Cir. 1995) (quotations, alteration, and citations omitted). "'Evidence is not unfairly prejudicial because it tends to prove guilt, but because it tends to encourage the jury to find guilt from improper reasoning.'" *United States v. Muhlenbruch*, 634 F.3d 987, 1001 (8th Cir. 2011) (quoting *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007)). "Confusion of the issues warrants exclusion of relevant evidence if admission of the evidence would lead to litigation of collateral issues." *Firemen's Fund Ins. Co.*, 63 F.3d at 758 (quotations and citations omitted). And, "[i]n determining whether proffered evidence is misleading or confusing, the trial court is given a great deal of discretion." *United States v. Witschner*, 624 F.2d 840, 846 (8th Cir. 1980).

---

[2]Here, the district court found that the audio recording of the telephone conversation was relevant evidence. Neither party disputes this finding on appeal.

"The admissibility of [the audio recording] . . . presents a close question under the standard of Fed. R. Evid. 403. We hold only that no abuse of discretion occurred in the circumstances presented in this case." *See United States v. Frederickson*, 601 F.2d 1358, 1365 n.11 (8th Cir. 1979).[3] This is because "the deferential standard of review tips the scales in favor of upholding the" district court's grant of Condon's motion in limine to exclude the audio recording of the telephone conversation. *See Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 603 (6th Cir. 1991). "[T]he district court [was] in a better position than we to evaluate the helpfulness of certain [evidence] and to make the subtle balancing required by Fed. R. Evid. 403." *Hogan v. Am. Tel. & Tel. Co.*, 812 F.2d 409, 411 n.2 (8th Cir. 1987) (per curiam).

First, there is no indication that the district court's ruling unfairly prevents the government from proving its case. *See Wheeling Pittsburgh Steel Corp.*, 254 F.3d at 716. Under § 2243(a), the government must prove that Condon (1) "knowingly engage[d] in a sexual act with" a minor, (2) the minor "ha[d] attained the age of 12

---

[3]In other contexts, we have held that it was not an abuse of discretion for a district court to *admit* a defendant's taped confession under Rule 403. *See, e.g., Muhlenbruch*, 634 F.3d at 1001 (holding that "the district court did not abuse its discretion when it permitted the government to play [a] videotape during" trial because the defendant's "videotaped confession was highly probative because it was direct evidence of [the defendant's] guilt" and "was used, in part, to impeach [the defendant's] testimony"); *United States v. Allee*, 299 F.3d 996, 1002 (8th Cir. 2002) (rejecting the defendant's argument "that the district court erred permitting the introduction of portions of telephone calls made by [the defendant] from jail while he was awaiting trial" and holding that the court did not abuse its discretion in admitting such tapes under Rule 403 where the defendant "advanced an alibi defense at trial" and the recorded calls could permit the jury to infer that the defendant's "statements were attempts to create an alibi, to implicate others in the crimes, or to persuade witnesses to remain quiet about his role in the crimes"). But just because we held that it was not an abuse of discretion to admit the taped confessions in those contexts does not lead to an automatic conclusion that the district court in the present case abused its discretion in *excluding* the audio recording.

years but ha[d] not attained the age of 16 years," (3) the minor "[was] at least four years younger than" Condon, (4) Condon is an Indian, and (5) the incident occurred within Indian Country. *See* 18 U.S.C. §§ 2243(a) and 1153. The government does not contend that the audio recording was the *only* evidence of Condon's guilt under the statutes. As the district court noted, no dispute exists that A.B.D. was 14 years old at the time of the purported offense and that Condon was 34 years old. Additionally, the parties have not only stipulated that Condon "is an Indian for the purpose of federal criminal jurisdiction" and that the incident "was committed within Indian Country," but also

> [t]hat testing [of A.B.D.'s underwear] resulted in the discovery of DNA, in the form of semen, found in the crotch of the underwear. The DNA was confirmed by the State Lab as belonging to CHRISTOPHER THOMAS CONDON.

This part of the stipulation relates to whether Condon "knowingly engage[d] in a sexual act with [A.B.D.]." *See* 18 U.S.C. § 2243(a).

Morever, contrary to the government's claim that the district court factually erred in concluding that "[t]his case hinges entirely on the affirmative defense under 18 U.S.C. § 2243(c)," the government itself represented in its opposition to the motion in limine that "the only issue at question for the jury is one pertaining to the available affirmative defense in this matter." Condon's counsel confirmed that understanding at the motions hearing, stating that Condon "reasonably believed that [A.B.D.] was 16 years or older" and was not contesting that he engaged in a sexual act with A.B.D.

Second, the district court adequately explained why the probative value of the audio recording was substantially outweighed by the danger of unfair prejudice, confusion of the issues, *and* misleading of the jury. Specifically, the court was

-13-

concerned about the "context in which the admissions were made" and, in addition to unfair prejudice, the possible confusion and misleading of the jury regarding the affirmative defense under § 2243(c). The court based its determination on the three possible "conflicting conclusions that any reasonable person could reach after listening to the telephone conversations, particularly in light of the availability of [the] affirmative defense." Those three interpretations were that Condon was (1) "admitting guilt to all of the essential elements of the crime of sexual abuse of a minor," (2) "admitt[ing] guilt to the essential elements of the crime but . . . not acknowledg[ing] or admit[ting] the absence of an affirmative defense, i.e., a 'technicality' or a 'loophole'"; or (3) "admitting that he was guilty in the sense that he had sexual contact with a 14-year old girl, but . . . condition[ing] those admissions on the possibility that he may be acquitted at trial because he 'reasonably believed' the victim was at least 16-years old." As the district court recognized at the motions hearing, describing the affirmative defense as a technicality or loophole could confuse or mislead the jury into believing that "some technicality may allow [Condon] to walk away."

Finally, the district court's reference to "privileged attorney-client conversations" in explaining why the probative value of the audio recording was substantially outweighed by the danger of unfair prejudice must be considered in context. We do not interpret the order as holding that unfair prejudice, confusion of the issues, or misleading of the jury existed because Condon revealed privileged communications. In context, the district court was expounding on *why* the jury could be confused or misled about Condon's reference to a "technicality" or "loophole," when he was actually referring to his attorney advising him about the availability of an affirmative defense. Condon never argued that the attorney-client privilege extended to the taped conversation with his mother, nor do we interpret the district court's order as holding such.

## III. *Conclusion*
Accordingly, we affirm the judgment of the district court.

_____