# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2760

_____

United States of America

*Plaintiff - Appellee*

v.

Sky Thomas Roubideaux

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: May 10, 2024
Filed: August 14, 2024

_____

Before COLLOTON, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Sky Thomas Roubideaux of attempted enticement of a minor using the internet in violation of 18 U.S.C. § 2422(b). The district court[1] sentenced him to the mandatory-minimum 120 months in prison, followed by five years of

---

[1]The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

supervised release. He appeals the conviction. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

In March 2022, federal and local law enforcement in Sioux Falls conducted an undercover operation to identify individuals actively enticing minors online for sexual purposes. Agents created profiles on social media applications, posing as minors. On March 6 an agent created a "Gregg" profile on the Grindr internet app. Some adults use Grindr to sexually exploit children (according to law enforcement). "Gregg's" profile, with an age-regressed photo, showed him as 18 years old.

Later that day, Roubideaux, a 22-year-old gay man, texted "Gregg" through the Grindr app. During the conversation, "Gregg" texted that he was younger than 18 years old, lived with his parents, and had not told them he was gay. The next day, Roubideaux again texted "Gregg." Early in the conversation, he asked "Gregg's" age. "Gregg" said he was a bit younger than 16. Roubideaux texted, "We can be friends . . . if anything happens it happens." As the conversation continued, "Gregg" referenced "other 15 year olds." Roubideaux asked when he turned 16; "Gregg" said in 8 months. Roubideaux said they could be "friends for awhile and see what happens." After discussing parents and security cameras, the conversation turned more sexual. Roubideaux asked, "What do you want to try." "Gregg" replied "Whatever." Roubideaux began discussing oral and anal sex, sexual positions, adding he was "into bondage and kinks like that." He and "Gregg" discussed hooking up, with Roubideaux saying, "I'll start whatever and if you don't like it we can stop." He advised "Gregg" to use "extra lube" for anal sex the first time. Roubideaux also discussed smoking marijuana with "Gregg" several times during both conversations.

After Roubideaux texted "when can I see you again," they agreed to meet that night at a park in Sioux Falls. Roubideaux texted explicit instructions for "Gregg" to get prepared for anal sex, including using a douche and trimming his pubic hair. Roubideaux said he would bring "lube and everything." Roubideaux texted that he was on his way, driving a blue car. Arriving at the parking lot, he was arrested. In his blue car were a cell phone, condoms, lubricant, and genital hygiene products.

All the Grindr texts between Roubideaux and "Gregg" were found on Roubideaux's cell phone.

## I.

Roubideaux argues that the district court should have granted his *Batson* challenge. This court reviews a *Batson* ruling for clear error. ***United States v. Granados***, 596 F.3d 970, 975 (8th Cir. 2010), *citing* ***United States v. Rodriguez***, 581 F.3d 775, 791 (8th Cir. 2009). When a defendant alleges that a prosecutor's juror strike is racially motivated, a district court applies a three-step process:

> First, the trial court must determine whether the defendant has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. Although the prosecutor must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor, but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

***Rice v. Collins***, 546 U.S. 333, 338 (2006) (internal quotation marks and citations omitted), *discussing* ***Batson v. Kentucky***, 476 U.S. 79, 98 (1986).

Here, the government used a peremptory strike against the only non-white juror on the prospective jury panel. *See* ***Johnson v. California***, 545 U.S. 162, 169-70 (2005) (striking all black venirepersons makes a prima facie showing for step 1). The prospective juror had written that she was "multi-race" and worked for a tribal community college. In response to Roubideaux's objection, the prosecutor asserted that he did not know this prospective juror was of "any other race," and that the juror was the only panelist who indicated she might be uncomfortable with the facts of the case, as she had four children, some of whom were teenagers.

Roubideaux argues that this proffered reason is pretextual because other white jurors with teenage children were not stricken from the panel. He relies on *Davidson v. Harris*, 30 F.3d 963, 965-66 (8th Cir. 1994), which found a *Batson* violation where defendants claimed to strike a black venireperson because she had young children, but did not strike two white venirepersons with young children. In this case, there is a difference: The white venirepersons did not express concern about serving on a case involving online enticement of a minor.

The district court discussed the process of reviewing a *Batson* challenge and evaluated the persuasiveness of the proffered reasons. The district court determined that the prosecution's explanation for striking the prospective juror was honest and race-neutral. *See **United States v. Darden***, 70 F.3d 1507, 1531 (8th Cir. 1995) (noting the district court is in the best position to judge the motives of the prosecutor based on demeanor and credibility). Roubideaux has failed to meet his burden to establish purposeful discrimination. The district court's *Batson* ruling was not clearly erroneous.

## II.

Roubideaux argues that the district court should have granted a judgment of acquittal based on his claim of entrapment. He asserts that the government failed to prove he was not entrapped, and thus that the evidence was insufficient to support the verdict. This court reviews de novo the denial of a judgment of acquittal, "considering the evidence presented at trial in the light most favorable to the verdict and drawing all reasonable inferences in the government's favor." ***United States v. Zupnik***, 989 F.3d 649, 652-53 (8th Cir. 2021), *citing **United States v. McAtee***, 481 F.3d 1099, 1104 (8th Cir. 2007). This court "will reverse only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt." ***Id.**, citing **United States v. Santana***, 524 F.3d 851, 853 (8th Cir. 2008). This "very strict" standard of review means that a verdict by the jury is not to be overturned lightly. ***United States v. Surratt***, 172 F.3d 559, 564 (8th Cir. 1999), *citing **United States v. Perkins***, 94 F.3d 429, 436 (8th Cir. 1996).

There are two elements to an entrapment defense: (1) government inducement of the crime, and (2) a defendant's lack of predisposition to commit the crime. ***United States v. Tobar***, 985 F.3d 591, 592 (8th Cir. 2021). "Inducement exists when the government 'implanted the criminal design' in the defendant's mind." ***United States v. Young***, 613 F.3d 735, 747 (8th Cir. 2010), *quoting* ***United States v. Eldeeb***, 20 F.3d 841, 843 (8th Cir. 1994). If the defendant establishes inducement, the government has the burden to prove beyond a reasonable doubt that the defendant is predisposed to commit the crime. ***Zupnik***, 989 F.3d at 655.

The district court ruled that Roubideaux made a showing of inducement sufficient to warrant instructing the jury on entrapment. According to Roubideaux, the government then failed to prove beyond a reasonable doubt the second element, his predisposition to commit the crime of attempted enticement of a minor. The predisposition element "focuses upon whether the defendant was an 'unwary innocent' or, instead, an 'unwary criminal' who readily availed himself of the opportunity to perpetrate the crime." ***United States v. Myers***, 575 F.3d 801, 805 (8th Cir. 2009), *quoting* ***Mathews v. United States***, 485 U.S. 58, 63 (1988).

Roubideaux insists that the government—not Roubideaux—turned the discussion toward sexual activity. Roubideaux points to text messages where he offered to just be friends and smoke marijuana together. However, he overlooks that "Gregg" texted that he was "younger," later adding he would turn 16 "in 8 months." "Gregg" stated he lived with his parents and was still in school. Roubideaux initiated the chat session on Grindr on March 6 and again began the conversation on March 7. Roubideaux asked "Gregg" if he wanted to be "fwb," meaning friends with benefits. Learning "Gregg" was younger than 16, Roubideaux stated they could be friends and "if anything happens it happens."

Reviewing all the evidence of a 22-year-old's interactions with an (apparent) 15-year-old, a reasonable jury could conclude that Roubideaux was predisposed to meet "Gregg" for sexual activity. *See* ***Zupnik***, 989 F.3d 655-56 (finding predisposition where the adult exchanged sexually explicit messages and planned to meet the minor in person to engage in sexual acts). "Because the entrapment defense

requires factual determinations about government conduct and its likely effect upon a defendant, '[t]he question of entrapment is generally one for the jury, rather than for the court.'" *Myers*, 575 F.3d at 805, *quoting Mathews*, 485 U.S. at 63. "Where the evidence is in conflict, we leave the jury's verdict undisturbed." *Id.*, *citing United States v. Pardue*, 983 F.2d 843, 847 (8th Cir. 1993) (per curiam). The government met its burden to prove beyond a reasonable doubt that Roubideaux was predisposed to commit the crime. The district court properly denied his motion for judgment of acquittal.

## III.

Roubideaux argues that the district court should have ordered a new trial, asserting that the verdict was against the weight of the evidence. This court reviews for abuse of discretion the decision to deny a new trial. *See United States v. Smart*, 501 F.3d 862, 865 (8th Cir. 2007). The district court "may vacate any judgment and grant a new trial if the interest of justice so requires." **Fed. R. Crim. P. 33(a)**. "However, this authority should be exercised 'sparingly and with caution.'" *Smart*, 501 F.3d at 865, *quoting United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002) ("Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand.")

In addition to reiterating his arguments about predisposition, Roubideaux contends he believed "Gregg" was actually an old friend named Greg that he had not seen for years. He argues that the small thumbnail-sized photo of "Gregg" on his phone looked like his old friend. He emphasizes that he greeted "Gregg" with the "How are you" text that he reserved for people he knew in person or had spoken to in the past.

The government presented substantial evidence to support the verdict, including the entire text conversations between Roubideaux and "Gregg" on Grindr. Government witnesses testified that the Grindr app is commonly used to arrange causal sexual encounters. The jury saw that each day, Roubideaux initiated the contact with "Gregg," beginning the first day with "I'm here for a boyfriend mainly."

After "Gregg" told him several times he was 15, Roubideaux's texts became more sexually explicit. The evidence showed that Roubideaux texted "Gregg" as he left work and arrived at the agreed location, possessing condoms, lubricant, and douche products. The jury could reasonably rely on this evidence to return a guilty verdict. The district court properly determined that a miscarriage of justice did not occur when the jury rejected Roubideaux's version of the facts. The district court did not abuse its discretion in denying a new trial.

IV.

Roubideaux argues that the district court violated his constitutional right to present a complete defense by excluding details of his conversations with other Grindr users. This court reviews for an abuse of discretion, giving substantial deference to the district court's exclusion of evidence if it does not unfairly prevent a party from proving its case. *United States v. Copp*, 1 F.4th 573, 576 (8th Cir. 2021), *citing United States v. Condon*, 720 F.3d 748, 754 (8th Cir. 2013). If exclusion of evidence implicates a constitutional right, including the right to present a complete defense, this court reviews de novo. *Id.*, *citing United States v. West*, 829 F.3d 1013, 1017 (8th Cir. 2016).

Evidence is relevant if it has any tendency to make a fact (of consequence in determining the action) more probable or less probable than it would be without the evidence. **Fed. R. Evid. 401**. Relevant evidence, however, may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." **Fed R. Evid. 403**. A district court has "'broad discretion' to determine the relevance of evidentiary matters." *United States v. Wilkens*, 742 F.3d 354, 363 (8th Cir. 2014), *quoting Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879, 885 (8th Cir. 2006). This court "will reverse on the basis of an evidentiary ruling only when it 'affects the substantial rights of the defendant or when . . . the error has had more than a slight influence on the verdict.'" *United States v. White Horse*, 316 F.3d 769, 776 (8th Cir. 2003), *quoting United States v. Ballew*, 40 F.3d 936, 941 (8th Cir. 1994).

Here, government witnesses testified several times—without objection—that Grindr is a "hookup app" or a "gay hookup app." In response, Roubideaux proffered detailed verbatim printouts of many of his Grindr chats with other users. Roubideaux argued these printouts would show he used a different greeting for people he knew, and more importantly, that he used Grindr for non-sexual or friendly chats, as well as for sexual chats. The district court admitted one printout showing how Roubideaux greeted 17 other users but excluded the remaining printouts as "misleading to the jury" and "not relevant" to the crime charged. Despite excluding the printouts of other conversations, the district court allowed Roubideaux to explain to the jury how he used the Grindr app. He testified about how he greeted people he knew. He testified that some of his 57 text conversations of March 6 and 7 were sexual in nature, but some were nonsexual. He testified he used Grindr to just have conversations, make friends, and arrange dates and hookups. The district court did not permit Roubideaux to testify to the details of the conversations with other users.

Plainly referring to "well-established rules of evidence" and "Fed. Rule Evid. 403" itself, the Supreme Court has stated that the Constitution permits judges "to exclude evidence that is 'repetitive . . . , only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'" *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006). Federal rule makers have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials," which "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Because the district court had unquestionably constitutional discretion to exclude the details of Roubideaux's conversations with other users, it necessarily follows that the district court's application of Rule 403 did not violate his right to present a complete defense. *See United States v. Duggar*, 76 F.4th 788, 792 (8th Cir. 2023) ("The right to present a complete defense, in other words, does not trump a district court's discretion to keep out confusing or misleading evidence, even if it would be helpful to the defense."); *West*, 829 F.3d at 1019 (holding that the right to present a complete defense does not entitle a defendant to present the jury with

evidence that is either irrelevant or properly excluded under Fed. R. Evid. 403). *Cf.* ***United States v. Zephier***, 989 F.3d 629, 636, 637 n.4 (8th Cir. 2021) (reversing the "total exclusion" of an "alternative explanation," adding that the right to present a complete defense does not give the defendant the right to "explore every detail" of the alternative explanation, which is subject to "reasonable restrictions" on the presentation of evidence).

\* \* \* \* \* \* \*

The judgment is affirmed.

_____