# United States Court of Appeals
### For the Eighth Circuit

_____

No. 25-1434

_____

United States of America

*Plaintiff - Appellee*

v.

Oscar Hudspeth, Sr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Western

_____

Submitted: October 24, 2025
Filed: April 24, 2026

_____

Before LOKEN, BENTON, and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

A jury convicted Oscar Hudspeth, a member of the Oglala Sioux Tribe, of two sex abuse crimes in Indian country for sexually touching his young stepdaughter D.J. on multiple occasions -- aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D), and abusive sexual contact of a child in violation

of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3). The district court[1] sentenced Hudspeth to the mandatory minimum sentence of 360 months imprisonment.

Victim D.J. testified at trial that Hudspeth touched her sexually on at least two occasions when she was five to seven years old. The credibility of this testimony was a major issue in the three-day trial and in the closing arguments of counsel. However, the government's trial evidence also included admissions Hudspeth made during an FBI interview, conducted soon after D.J. told a school administrator that Hudspeth had "done bad things to me," that he "probably maybe" touched D.J.'s vagina while she was living with her stepfather in his home from ages four to seven. In pretrial and trial rulings, the district court ruled that testimony by the interviewing agent and a redacted version of the interview transcript would be admitted but barred both parties from telling the jury Hudspeth failed a polygraph test just before this interview.

Hudspeth appeals, arguing this evidentiary exclusion violated his constitutional right to present a complete defense because it prevented him from arguing to the jury that he made the incriminating statements only to "explain away" adverse polygraph test results. The government argues that Hudspeth is not entitled to review of this issue and that, even if preserved, the argument is without merit. We will bypass a complex invited error contention. Reviewing the complete-defense argument on the merits, we conclude there was no constitutional violation or abuse of discretion and affirm Hudspeth's conviction.

## I. Background and Procedural History

When D.J. was seven, she moved out of Hudspeth's home because he and her mother were separating. When she was eleven, she told a school administrator

---

[1]The Honorable Camela C. Theeler, United States District Judge for the District of South Dakota.

Hudspeth had "done bad things to me."  The administrator reported this to a school social worker.  D.J. also reported the abuse to her mother and in a forensic interview.

After Hudspeth learned that D.J. had made allegations against him, he agreed to a voluntary law enforcement interview and polygraph test at a social services building.  FBI Special Agent Timothy Wittman administered the polygraph test and then told Hudspeth it was "absolutely clear you did have some type of sexual contact" with D.J.  Hudspeth initially denied sexual contact -- "I swear to God I didn't."  But as the interview continued, he made increasingly incriminating statements, such as "I probably did touch her vagina," that he "might've" had an erection when he touched her, and that he had "probably" incriminated himself.

On the eve of trial, the government moved to admit the post-polygraph interview but to suppress all mention of the polygraph.  Hudspeth agreed the polygraph should be excluded and argued that the entire interview should be suppressed because the polygraph is mentioned throughout the interview.  Alternatively, he argued that, if the interview is admitted, all mention of the polygraph should be redacted, and he moved to prohibit reference to the polygraph.  At the first pretrial conference, the district court noted both parties agreed there should be no reference to the polygraph exam.   The government argued redactions were feasible; Hudspeth said that was impossible.  The court postponed ruling until the next pretrial conference so the government could produce proposed redactions.  At that second conference, the government produced a 46-minute recording and corresponding redacted transcript that removed any mention of the polygraph exam.

When it became clear the court would admit some version of the interview, Hudspeth changed positions, arguing the entire interview should be admitted or played in a recording to provide context, including references to the polygraph exam.  The district court noted this request was contrary to counsel's motion in limine and asked if he had alternative redactions to propose.  Hudspeth did not propose

additional redactions. The district court noted Hudspeth's concerns about placing the statements in context in ruling that the 46-minute redacted recording would be admitted. Hudspeth renewed his objection to the recording at trial. But he did not argue that admitting evidence of the interview while excluding any mention of the polygraph test would violate his right to present a complete defense.[2]

Consistent with her initial reports, D.J. testified at trial that Hudspeth touched her sexually on at least two occasions when she was five to seven years old while her mother was not home. On the first occasion, Hudspeth told her to come to his bed so he could check her underwear. While laying behind the child, he put his hands under her underwear, touched her "private part" with his hands, and moved it in a circular motion. His hands were "big, warm, and felt like sandpaper" and his breathing was heavy. He stopped when D.J. said she was going to her room. The second time, D.J. went into her parents' room to play. Hudspeth said he was going to check her underwear. He put his hand under her pants and underwear and touched her vagina. He also put his hand on her butt, underneath her underwear. D.J. felt "something poky" on her butt while Hudspeth was lying behind her and touching her.

After the government rested, Hudspeth testified in his own defense about the conditions of the interview, that he was frustrated, had not eaten, and had not taken his diabetes medicine. He was not permitted to explain to the jury that the interview took place after he was told he failed a polygraph test. On appeal, he argues this deprived him of his constitutional right to present a complete defense.

---

[2]Hudspeth had twice asked the district court to exclude all references to the polygraph. "Under the invited error doctrine, a defendant who invites the district court to make a particular ruling waives his right to claim on appeal that the ruling was erroneous." United States v. Corn, 47 F.4th 892, 895 (8th Cir. 2022) (citation omitted), cert. denied, 143 S. Ct. 1093 (2023).

## II. Discussion

We review evidentiary rulings for abuse of discretion, giving substantial deference to the district court's exclusion of evidence if it does not unfairly prevent a party from proving its case. If exclusion of evidence implicates a constitutional right, including the right to present a complete defense, our review is *de novo*. United States v. Roubideaux, 112 F.4th 606, 613 (8th Cir. 2024) (citations omitted).

"The Fifth and Sixth Amendments guarantee criminal defendants a meaningful opportunity to present a complete defense." United States v. Duggar, 76 F.4th 788, 791 (8th Cir. 2023) (cleaned up), cert. denied, 144 S. Ct. 2685 (2024); see Crane v. Kentucky, 476 U.S. 683, 690 (1986). "[T]he Supreme Court has struck a balance to accommodate other legitimate interests in the criminal trial process: ordinary evidentiary rules still apply, except when they infringe upon a weighty interest of the accused and are arbitrary or disproportionate to the purposes they are designed to serve." Duggar, 76 F.4th at 791 (cleaned up), quoting United States v. Scheffer, 523 U.S. 303, 308-09 (1998).

Hudspeth has not satisfied either requirement. First, Hudspeth lacked a "weighty interest" in the excluded evidence. "[T]here is simply no consensus that polygraph evidence is reliable." Scheffer, 523 U.S. at 309. Likewise, "[o]ur cases make clear that polygraph evidence is disfavored." United States v. Gill, 513 F.3d 836, 846 (8th Cir. 2008) (collecting cases). Thus, application of this ordinary rule of exclusion does not infringe a weighty interest of the accused.

Hudspeth argues he had an interest in providing context for his incriminating statements -- that he made the statements only because he was under "psychological pressure" to "explain away" the polygraph results. The jury was well aware of the context surrounding Hudspeth's incriminating statements in the interview. Agent Wittman began the interview saying "it's absolutely clear that you did have some type

of sexual contact with" D.J. The jury then heard Hudspeth, testifying in his own defense, try to "explain away" his incriminating statements by focusing on the stressful nature of the interview. He does not explain how the jury knowing of the polygraph test would "change the context" to make the incriminating statements more likely false. The evidence, including the interview transcript, told the jury that Hudspeth was under "psychological pressure" to "explain away" his incriminating admissions. Yet they either found the admissions credible, or found that the other evidence, primarily D.J.'s testimony, established Hudspeth's guilt without regard to the credibility of his interview admissions. The evidence provided the district court constitutionally sufficient context to admit Hudspeth's interview statements but exclude reference to the presumptively unreliable polygraph evidence.

Hudspeth argues that Crane v. Kentucky allows a defendant to admit *any* evidence providing context for a confession regardless of the rules of evidence. We rejected this argument in Rucker v. Norris:

> Crane proscribed only the "wholesale exclusion" of evidence pertaining to the credibility of a confession. The Court carefully explained that it was not questioning "the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability," nor the "wide latitude" given trial judges to exclude "repetitive" evidence, "marginally relevant" evidence, and evidence posing an undue risk of harassment, prejudice, or confusion of the issues.

563 F.3d 766, 770 (8th Cir.), quoting Crane, 476 U.S. at 689-91, cert. denied, 558 U.S. 950 (2009).

Second, the exclusion of this polygraph evidence was not arbitrary nor disproportionate to the purposes Rule 403 of the Federal Rules of Evidence is designed to serve. The benefit to Hudspeth of admitting facially adverse polygraph

evidence is speculative, but there are strong justifications for excluding it. These include "ensuring that only reliable evidence is introduced at trial, preserving the court members' role in determining credibility, and avoiding litigation that is collateral to the primary purpose of the trial." Scheffer, 523 U.S. at 309. Hudspeth concedes that polygraph results are almost always excluded but argues that harm occurs only when polygraph evidence is introduced for the test results, whereas he seeks admission to show the effect it had on him. We are unpersuaded. Once the polygraph door is opened, the prosecution will no doubt inquire into the unfavorable test results, triggering a collateral mini-trial with conflicting expert opinions as to the reliability of polygraph testing. And even if the test results were excluded, the jury would infer the results were unfavorable, since his proffered defense -- "I was pressured into explaining the results" -- only makes sense if he failed the test. Thus, giving the jury slightly less context for Hudspeth's admissions was a "proportionate" way of keeping presumptively unreliable evidence out of the trial.

Finally, even if the district court erred in excluding any reference to the polygraph test, any error was harmless beyond a reasonable doubt. United States v. Herbst, 668 F.3d 580, 585 (8th Cir. 2012). The evidence against Hudspeth was strong. D.J. testified credibly and in great detail about Hudspeth's abuse and was subject to extensive cross-examination establishing that her memory of terrifying events some years earlier was imperfect. The forensic interviewer provided expert testimony why children who suffer sexual abuse often have memory gaps and frequently delay reporting the abuse. In addition, Hudspeth made over a dozen incriminating statements in the post-polygraph interview, and many of his incriminating statements corroborated D.J.'s testimony. Before Agent Wittman's interview of Hudspeth, D.J. had accused Hudspeth of sexual abuse in the forensic interview. Hudspeth was aware of the general nature of the allegations but did not know the specifics. Yet his incriminating account of the incidents aligned with hers -- the number of times he touched her (two or three, definitely not four), the touching under her underwear, the erection poking her through his shorts.

Moreover, if polygraph evidence would have impacted Hudspeth's defense, it would probably be harmful since he *failed* the polygraph. Though judges and experts consider polygraph tests generally unreliable, juries are believed to give the results too much weight. See Scheffer, 523 U.S. at 309, 313-14. This is one reason there is a strong presumption against their admission. See Gill, 513 F.3d at 846. This is likely why Hudspeth initially moved to have this evidence excluded. Because "the evidence of [his] guilt was strong and the probative weight of the excluded evidence was relatively weak, we are confident that the error complained of did not contribute to the verdict obtained." United States v. Eagle, 498 F.3d 885, 889 (8th Cir. 2007) (cleaned up).

For the foregoing reasons, the judgment of the district court is affirmed.

_____